561 A.2d 1

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James NEELY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 11, 1989.

Decided June 28, 1989.

John W. Packel, Chief, Appeals Div., Jeffrey P. Shender, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Laurie Magid, for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented in this case is whether the trial court erred in refusing to instruct the jury that evidence of good character (reputation) may, in and of itself, (by itself or alone) create a reasonable doubt of guilt and, thus, require a verdict of not guilty.

James Neely, appellant, was convicted by a jury of recklessly endangering another person (18 Pa.C.S.A. § 2705) and possessing an instrument of crime (18 Pa.C.S.A. § 907). At trial Neely called as character witnesses, Mr. Gregory A. Coleman, Chief of Staff of the Philadelphia City Council and Mr. Bernard Brown, Recreation Supervisor of the Philadelphia Department of Recreation. These two witnesses attested to Neely's excellent reputation for being a peaceful and law abiding citizen.

At the conclusion of the trial, Neely's counsel requested a jury instruction in accordance with the Pennsylvania Suggested Standard Jury Instructions that "evidence of good character may, by itself, raise a reasonable doubt of guilt and justify a verdict of not guilty".[1] The trial judge refused to give this specific charge and, instead, only instructed the jury that "evidence of good character is material and essential testimony in determining the innocence of the defendant". Notes of Testimony (N.T.) 7/25/89 at p. 598. When defense counsel, displeased with the instruction on character evidence given by the court, requested a more specific charge, the trial judge refused stating: "I am trying to change the law of *Parks*, I think it's wrong, so you have an automatic exception to that". (N.T.) 7/25/89 at p. 606.

Post-verdict motions were denied by the trial court which noted that the case provided it with "a long-overdue opportunity to urge upon our appellate courts that Pennsylvania law on the evidentiary weight given to reputation testimony in cases such as this one is both unsound as well as unjustified and must be repudiated". Trial Court Op. at p. 7. The Superior Court, in reviewing the case *en banc*, affirmed the judgment of sentence. *Commonwealth v. Neely*, 372 Pa.Super. 519, 539 A.2d 1317 (1988). We granted allocatur and we now reverse.

In *Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607, (1981) this court, in a unanimous opinion, noted that "[a] defendant is entitled to a charge that character evidence alone may be sufficient to raise a reasonable doubt and justify an acquittal of the charges." *Id.*, 496 Pa. at 195, 436 A.2d at 611 fn. 1. In *Scott* this court reaffirmed our position that such a charge was as imperative in criminal trials in 1981 as it had been in earlier cases of this court.

---

1. Pennsylvania Suggested Standard Criminal Jury Instructions § 3.06(3) provides:

   **DEFENDANT'S CHARACTER (REPUTATION)** The law recognizes that a person of good character is not likely to commit a crime which is contrary to his nature. Evidence of good character may by itself raise a reasonable doubt of guilt and justify a verdict of not guilty.

*See, Commonwealth v. Cleary,* 135 Pa. 64, 82–83, 19 A. 1017, 1018, (1890) ("Evidence of good character ... may of itself, by the creation of a reasonable doubt, produce an acquittal.") and *Commonwealth v. Stoner,* 265 Pa. 139, 143, 108 A. 624 625 (1919) ("Good character is of importance in this: that it may, in itself, in spite of evidence to the contrary, raise a reasonable doubt in the minds of the jury and so produce an acquittal.")

In *Cleary* we recognized the importance of reputation evidence when we stated: "Of what avail is a good character, which a man may have been a lifetime in acquiring, if it is to benefit him nothing in his hour of peril?" *Id.,* 135 Pa. at 84, 19 A. at 1018 (1890). As my distinguished colleague, Justice James McDermott has commented:

"To offer evidence of an otherwise unblemished life is not a plea of mercy. It is, in fact, to be weighed against any present allegation to the contrary. Character evidence may give a name to damning combinations different than what they seem, and be the truth that sets one free."

Indeed the value of a good reputation has been highly regarded since antiquity. Reputation has been characterized as more valuable than riches, precious materials and gold: "A good name is better than great riches." Cervantes, *Don Quixote* pt. ii, ch. 15 (1615); "A good reputation is more valuable than money." Publilius Syras, *Sententive No. 108.* "A good name is better than precious ointment." *Old Testament: Ecclesiastics,* vii, 1; "Reputation is a jewel." Vanburgh, *The Provoked Wife* Act i, sc., 2; "The purest treasure mortal times afford. Is spotless reputation...." Shakespeare, *Richard II,* Act i, sc. 1, ln. 177; "It is better to have nobility of character than nobility of birth." (Unknown).

Famous scholars, philosophers and writers have analogized "reputation" to the dominating force that sustains life and to life itself: "Reputation is the life of the mind, as breath is the life of the body." Gracian, *The Complete Gentlemen;* "Character is the governing element of life, and is above genius." Frederick Saunders, *Stray Leaves;*

"Good name in man and woman, dear my lord, Is the immediate jewel of their souls ..." Shakespeare, Othello, Act iii, sc. 3, ln. 155; "A good name is a second life, and the groundwork of eternal existence." Bhascara Acharya, *Lilawati* (Longfellow, *Kavanaugh* ch. 4.); "Take away my good name and take away my life." Thomas Fuller, *Gnomologia* No. 4306; "Character is destiny." Heraclitus (500 B.C.).

Other authors and luminaries teach us that reputation is virtually immutable:

A great character, founded on the living rock of principle, is, in fact, not a solitary phenomenon, to be at once perceived, limited, and described. It is a dispensation of providence, designed to have not merely an immediate, but a continuous, progressive, and never-ending agency. It survives that man who possessed it: survives his age,—perhaps his country, his language. Edward Everett, Speech: *The Youth of Washington*, July 4, 1835; "If you hear a mountain has moved, believe; but if you hear that a man has changed his character, believe it not." Mohammedan Proverb.

Additionally, inspired writings show us that a good character/reputation ensures trustworthiness: "A good character carries with it the highest power of causing a thing to be believed." Idem, *Rhetoric;* "Put more trust in nobility of character than in oath." Solon, *Dioenes Loertius*, sec. 16; "Reputation is a hallmark: it can remove doubt from pure silver ..." Mark Twain (from an unmailed letter dated 1886); "Fame is a vapor, popularity an accident, riches takes wings, those who cheer today may curse tomorrow, only one thing endures—character." Horace Greely.

In this case the trial court candidly admitted both on the record and in its opinion that it was attempting to change the law regarding reputation evidence. That court was wrong when it characterized our courts as having "elevated reputation evidence to undeserved heights". Trial Court Op. at p. 7. Pennsylvania case law since the turn of the century coupled with a historical view of the importance of

"reputation" supports our high regard for the value of reputation evidence and our view that it is not "mere make weight, thrown in to assist in the production of a result" evidence. *Cleary* at 82, 19 A. at 1019. Clearly then, both of the lower courts erred in ignoring prior precedent of this court.[2] Often a person takes a lifetime to build his or her reputation and when the dark clouds of life gather, one's reputation may be all that one has to ward off the impending downpour and at that moment it may be the *only* beacon of truth—truth is reputation's reward. A criminal defendant must receive a jury charge that evidence of good character (reputation) may, in and of itself, (by itself or alone) create a reasonable doubt of guilt and, thus, require a verdict of not guilty.

Accordingly, the decision of the Superior Court is reversed and a new trial is ordered.

NIX, C.J., did not participate in the consideration or decision of this matter.

FLAHERTY, J., filed a dissenting opinion.

FLAHERTY, Justice, dissenting.

While I have no disagreement with the majority's peroration on the importance of one's reputation, I see little need to make that point by resort to a book of famous quotations, and I fail altogether to see what relevance it has to the question in the case: viz., the correctness of the instruction given to the jury.

The trial court's charge on character, which the majority chooses not to recite, is as follows:

> Evidence of good character is very important testimony, because the law says that when a person has a prior good reputation in the community, that person is not

---

**2.** As Chief Justice Nix recently stated in his concurring opinion in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986):

> Regardless of how laudable the trial court's intentions may have been, ... its unauthorized refusal to apply existing law cannot be tolerated. To permit such a practice will throw the administration of justice and the expectations of litigants into utter confusion. *Id.*, 510 Pa. at 136, 507 A.2d at 73.

likely to commit a crime that's against that person's nature. Evidence of good character is material and essential testimony in determining the guilt or innocence of the defendant.

This kind of testimony as to the defendant's good character is not to be made light of. It's not a mere makeweight thrown in to fill out the case or fill in a gap. It's affirmative, substantive, testimony to be weighed and considered by the jury in connection with all the other evidence in the case as bearing upon the question of whether or not the Commonwealth has or has not established the guilt of the defendant as he stands charged beyond a reasonable doubt.

It is difficult to see where this charge is defective, for, as the Commonwealth points out, it accurately states that character evidence is important substantive evidence, like any other evidence, and is *neither inferior nor superior* to any other type of evidence; and also, it correctly states that character evidence *must be considered* with all the other evidence in one overall inquiry on reasonable doubt.

I agree with the Commonwealth that the "of itself" charge is fundamentally misleading because it suggests that character evidence, unlike other types of evidence, creates a reasonable doubt in a manner different from all other evidence. Insofar as that misconception is, in fact, promoted, reputation evidence usurps the jury's function by suggesting what weight to give a particular type of evidence, thereby encouraging the jury to ignore all other evidence and to give reputation evidence what the English call "pride of place."

While some of this Court's past cases have approved of the use of the "of itself" charge, only one case can be read as requiring its use, and that case treats the issue in a one-sentence footnote which is dictum. *See Commonwealth v. Scott*, 496 Pa. 188, 195 n. 1, 436 A.2d 607, 611 n. 1 (1981).[1] Of the thirty-one states which have considered the

---

1. In *Commonwealth v. Aston*, 227 Pa. 106, 75 A. 1017 (1910), the defendant asked for the following charge:

question, only one state has required a charge similar to that at issue here; the remaining states favored a charge similar to that given by the trial court in which character evidence is considered along with all other evidence.

It simply makes no sense to instruct a jury, in effect, that its task is divided into two steps in which it first must consider whether the defendant's evidence of good reputation creates a reasonable doubt in the case, and then if it does not, consider the rest of the evidence, both of the defense and the prosecution. Instead, reputation evidence should be treated like any other evidence, one of many considerations in a one-step process of determining guilt or innocence. The trial court properly instructed the jury and should be affirmed.

> Evidence of good character is material and substantive evidence in the cause, and may, *of itself,* reduce the crime from murder in the first degree to murder in the second degree.
>
> (Emphasis added.) The Court, in rejecting this charge, stated:
>
> The rule of all the cases is that evidence of good character is always admissible and must be weighed and considered by the jury in connection with the other testimony in the case, and it to be regarded as evidence of a substantive fact like any other evidence tending to establish innocence. In some instances it may of itself create the reasonable doubt which will entitle the accused to an acquittal.... The jury were instructed that evidence of good character must be considered in connection with all the other testimony in the case, *but that it did not raise a distinct issue.* The defendant was given the benefit of his evidence of good character, and there is nothing in this record about which he can justly complain.
>
> 227 Pa. at 111, 75 A. 1017. This is still good law today, and it is inexplicable why the majority ignores it. The *Aston* Court's statement that in some cases, character evidence may of itself create reasonable doubt which would result in an acquittal does not mean that a jury must be instructed in these words, but only that when the jury is considering all the evidence, it may, in a given case, find that character evidence is so strong that it "of itself" raises a doubt as to guilt. *See also Commonwealth v. Stelma,* 327 Pa. 317, 323, 192 A. 906 (1937); *Commonwealth v. Beingo,* 217 Pa. 60, 66 A. 153 (1907).