634 A.2d 789

**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**The FRATERNAL ORDER OF POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1992.

Decided Nov. 30, 1993.

252

Joanna N. Reynolds, Asst. Counsel, for petitioner.

Anthony C. Busillo, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PELLEGRINI, Judge.

The Pennsylvania State Police (State Police) appeal an award entered in an arbitration award sustaining the grievance of the Pennsylvania State Troopers' Association (Association) filed by the Association on behalf of Corporal Bernard Chatman, Sr. (Chatman).[1]

The record before us is scant. Although the exhibits introduced by both parties in the arbitration proceeding have been preserved for the record, there is no transcript of the hearing available. The following recitation of fact is gleaned primarily from the arbitrator's opinion in support of his award and the parties' briefs to the extent that the parties are in agreement.

In June of 1987, the enforcement functions of the Pennsylvania Liquor Control Board were transferred to the State Police. Former Liquor Control Board enforcement officers (LEOs) were retained as civilian employees under the supervision of state troopers. In February of 1988, Chatman was designated as Commander of the Altoona District Office of the new Liquor Enforcement Bureau within the State Police. According to the arbitrator, this transfer of enforcement powers "was resisted and resented by the civilian liquor enforcement officers who were retained and had to change their easy ways to the rigors of State Police oversight when Chatman assumed command of the Altoona District Office ..."

On May 4, 1988, Chatman accompanied four LEOs to a raid on an unlicensed establishment for violations of the Liquor Code. The LEOs seized beer, liquor and other items (e.g., jukebox, cigarette machines, a cooler, etc.) and transported the seized property to the Bedford County prison where such property was kept in a storage room.

On Chatman's order, the LEOs removed six cases of previously seized wine from the storage room to make way for the newly seized goods. Mistakenly believing that there was a destruction order for the previously seized wine, he directed each LEO to take one case of wine and destroy it personally. Chatman took two cases of this wine. The arbitrator found

1. This opinion was reassigned to the author on May 11, 1993.

that Chatman destroyed the wine at home, although he first tasted the wine from one bottle.[2] During the course of inventorying the seized property, the LEOs discovered two glass steins and some six dozen beer mugs in the cooler confiscated from the raid. Chatman acquiesced in the distribution of the beer mugs among the LEOs, but according to the arbitrator, ordered them to get rid of them. Chatman kept the two glass steins and some of the mugs, but the arbitrator found, never used them.

Chatman began experiencing difficulties with the LEOs, according to the arbitrator, as a result of making them increasingly accountable for their performances and commenced disciplinary actions against the LEOs. Because of this increased resistance by the LEOs to his supervision, he requested the State Police to conduct an internal investigation. On May 18, 1989, Chatman was summoned to State Police headquarters in Harrisburg where he met with two Lieutenants in the Bureau of Liquor Control Enforcement. Expecting to discuss the investigation request, Chatman was instead questioned about the May 4, 1988 raid and about the disposition of the six cases of wine, the plastic beer mugs and glass steins.

Chatman admitted that the disposition of this seized property was not in accordance with applicable regulations, but denied any criminal intent or any intent to appropriate these items to his own use. He stated that he took the two glass steins and distributed the plastic mugs among the other LEOs, and that he directed the LEOs to "get rid of" the mugs. Chatman also stated that he had ordered the LEOs to each destroy one case of wine to make room in storage, and he later instructed the sheriff at the property to destroy the rest of the cases of wine.

The following day, Chatman was arrested and charged with theft, receiving stolen property and other offenses relating to the May 4, 1988 incident, and was suspended without pay.

2. The arbitrator also found that this was the destruction procedure that was the prevailing custom of the LEOs at the time Chatman assumed control of the Altoona District Office.

The State Police did not file criminal charges against any of the LEOs.

On October 31, 1989, the Commissioner of the Pennsylvania State Police scheduled a court-martial proceeding against Chatman which was continued pending disposition of the criminal charges. On July 2, 1990, Judge Callan of the Court of Common Pleas of Blair County dismissed the criminal charges against Chatman pursuant to 18 Pa.C.S. § 312 because any criminal conduct on May 4, 1988, was, at most, a "de minimis infraction" that was "too trivial to warrant the condemnation of conviction ...".[3]

On October 17, 1990, the State Police notified Chatman that he would be dismissed from the force for violation of various field regulations relating to the disposition of the wine and beer mugs/steins on May 4, 1988, namely, FR 1–1.01, Unbecoming Conduct; FR 1.2.01, Performance of Duty; and FR 1–1.02, Conformance to Laws. Three of the four LEOs received five-day suspensions for their participation. Pending disposition of any grievance, Chatman was to remain suspended without pay.

Chatman exercised his option to file a grievance challenging this discipline under the 1990–1992 collective bargaining agreement.[4] By letter of October 23, 1990, to the Director of the Bureau of Labor Relations, he denied "all criminal intent and all intentional alleged violations of P.S.P. Rules and Regulations." Because of some uncertainty regarding the new elective grievance arbitration procedures, the FOP did

---

**3.** *Commonwealth v. Chatman*, Blair Co. C.P. No. 1209 CR of 1989, slip op. at 2. In his opinion dismissing the charges, Judge Callan observed:
> There is something in this case that is far more involved than a simple theft, which did not come out in testimony. It is evident to this Court that there are internal problems the Pennsylvania State Police has with this officer. Whatever those problems might be, this Court is not going to allow the Criminal Justice System to be the forum in which to sort out that problem.

*Id.*

**4.** For the first time, the 1990–1992 collective bargaining agreement between the State Police and the Association allows a police officer charged with an offense subject to court martial to elect either court martial or grievance arbitration.

not file a formal written grievance with the Bureau, and the parties did not formally identify in writing the exact issues submitted for arbitration. Prior to this arbitration hearing, counsel for the FOP and the State Police informally discussed with the arbitrator the issues that would be presented for resolution.

On December 10, 1990, the arbitrator issued an award in favor of Chatman, which concluded that Chatman "was not dismissed for cause."[5] He found that there was no evidence to support the State Police's charges that Chatman had any criminal intent to steal or take seized property for his own use. The award directed that Chatman "be reinstated with full seniority ... be made whole for all monies lost without any offset," and that the State Police "reimburse the attorneys' fees ... both for the criminal court and arbitration proceedings." Arbitrator's Opinion at 16. This appeal followed.

■ Although we had previously held that the standard of review on appeal from an Act 111[6] grievance arbitration is in the nature of "narrow certiorari,"[7] we have recently decided that because the source for the authorization for police and fire grievance arbitration is the Uniform Arbitration Act, correspondingly, the standard of review is the one provided for in that Act, 42 Pa.C.S. § 7302(d), the essence test. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993). The "essence test", in just cause cases, is whether the arbitrator's award is one that can be derived from the essence of the collective bargaining agree-

---

5. The arbitrator determined that although Chatman admitted that the "disposition of the contraband did not follow regulations," he was dismissed because the State Police "either misinterpreted the plain facts or was misled by persons bent on destroying Cp. Chatman's career and escalated what was, at worst, a debatable mistake in judgment, to *theft*." Arbitrator's Opinion at 13 (emphasis in original).

6. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Act 111 applies only to police and fire personnel.

7. *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989).

ment. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989).

The State Police are not challenging the arbitrator's decision that there was no just cause to terminate Corporal Chatman, only that the arbitrator exceeded his authority in not ordering an offset on the back pay award and in awarding Chatman attorneys' fees for both the criminal and arbitration proceedings.

The briefs, however, disclose a factual dispute between the parties as to what issues were actually submitted to the arbitrator [8] relating to whether he even had jurisdiction to grant some of the relief awarded. The parties agree that there was an informal, untranscribed discussion between counsel for the parties and the arbitrator regarding the scope of the issues submitted.[9] The parties do not, however, agree as to the exact issue submitted once the arbitrator made a finding of no just cause nor does the arbitrator identify the issue submitted. The State Police claim that the issue submitted was "what the appropriate *penalty* should be", while the Association claims it was "what should the *remedy* be." If the issue dealt only with the penalty, then the arbitrator would be without any authority to grant any affirmative relief to Chatman.

They ask us to resolve the exact question submitted to the arbitrator for resolution. Not having a record and not being factfinders, we decline to do so. While grievance arbitration proceedings are even less formal than most administra-

8. Section 1 of Article XXVIII of the collective bargaining agreement between the State Police and the Association provides that:

The arbitrator shall neither add to, subtract from nor modify the provisions of this agreement or of the arbitration awards. The arbitrator *shall confine himself/herself to the precise issue submitted* for arbitration and shall have no authority to determine any other issues not submitted to him/her.

9. Ordinarily, we would expect that the issues would be designated in a formal submission to the arbitrator. However, because this was one of the first cases dealing with challenging discipline through the grievance arbitration procedure, the parties apparently were unsure of how to proceed.

tive proceedings, the parties should create and preserve a record so that the court can properly conduct its judicial review, not ask that critical blanks be filled in by the reviewing court. To avoid the situation of the parties on appeal disagreeing as to what happened and what was presented both legally and factually to the arbitrator, if, as here, there is no record evidence to the contrary, we will assume that the arbitrator had jurisdiction over the matters resolved in his award and that the facts are as he or she recounts them.

## I.

■ The arbitrator reinstated Chatman with full seniority and ordered "back pay without any offsets" in order to make Chatman "whole". The State Police concede that back pay is an appropriate remedy if the arbitrator's determination of no "just cause" is upheld, but argues that there was no basis upon which the arbitrator could make such an award because the issue of whether the State Police were entitled to an offset was not raised at the arbitration hearing. Accordingly, the State Police suggest that this "unique" relief (back pay without offset) went beyond the submission of issues to the arbitrator and exceeded the arbitrator's authority.

We need not address that issue. The State Police admit that it did not argue or present any evidence on the issue of any offset to Chatman's back pay. How then can the State Police complain that the arbitrator should have granted an offset for unemployment compensation or other wages that Chatman may have earned while he was suspended from the state police force? In effect, because no offset was established, the language without offset was surplusage. We hold that the arbitrator did not exceed his authority in reinstating Chatman with full back pay without any offset.

## II.

■ The collective bargaining agreement establishes the grievance procedure in Article XXVIII, Section 1, that contains the following language:

All fees and expenses of the arbitrator shall be divided equally between the parties. *Each party shall bear the cost of preparing and presenting its own case.* Either party desiring a record of the proceedings shall pay for the record and make a copy available without charge to the arbitrator (emphasis added).

Under this provision, each party is responsible for their own attorneys' fees at the arbitration proceeding. As such, the arbitrator's award of counsel fees was improper, as "not being derived from the essence of the agreement."

### III.

■ The arbitrator also awarded Chatman reimbursement for attorneys' fees for the criminal proceedings. The collective bargaining agreement contains a specific provision for payment of such fees for legal counsel. Article XXVIII, Section 1 of the collective bargaining agreement provides:

If a member is charged with a criminal action arising from the performance of his/her duties, he/shall shall select local counsel in consultation with his/her Commanding Officer. The Commonwealth shall pay for the fees of such counsel to the extent the fees are in line with prevailing rates in the area.

If the condition precedent of Article XXVIII, Section 1 has been satisfied, that is, if Chatman selected counsel "in consultation with" his commanding officer, Chatman is entitled to attorneys' fees for his successful defense of the criminal charges arising out of this incident. He would be entitled to those fees even if the arbitrator had sustained the discharge because he was acquitted of the criminal charges that were brought against him.

While not disputing that Chatman may be entitled to counsel fees, the State Police contend that matter was not before the arbitrator. It contends that Chatman had to raise his entitlement in a separate grievance. Ordinarily, the question of reimbursement for counsel fees would not be before the arbitrator when the matter being considered was whether

there was just cause for discipline. When the State Police refuse to reimburse, that is a separate dispute to be resolved by the Association on Chatman's behalf by filing a grievance. Because it is a separate matter and not dependent on the just cause arbitration, the reimbursement of counsel fees would not normally be considered incidental to resolving a just cause grievance, unless the parties agree to make it part of that proceeding. Because, however, no adequate record was kept and the parties dispute as to what was submitted to the arbitrator, we, in accordance with the presumption set forth earlier in this opinion, assume that the matter was submitted to him to decide.

The State Police contend that even if the arbitrator had jurisdiction, there are no findings in the award that the two contractual condition precedents necessary to be paid attorneys' fees—that the commanding officer be consulted or that the rates awarded were the prevailing rates within the area—have been satisfied. While the arbitrator did not address those conditions, we do not think it is necessary to remand for that purpose. As to the condition precedent requiring Chatman to consult with his commanding officer prior to retaining counsel, in this case, there is an inherent conflict for making Chatman consult when it was the State Police who initiated the charges against him. Because even if Chatman had failed to consult would not deprive him of fees, the arbitrator's failure to make a finding is not critical. As to the arbitrator's failure to find that the rate charged was the rate prevailing in the area, the arbitration award only generally awards the fees. If Chatman's counsel submits a bill that the State Police believe is not at the prevailing rate, they can take that matter back to the arbitrator, who left the arbitration open to resolve this type of dispute. Accordingly, we affirm the arbitrator's award of counsel fees incurred by Chatman in defense of the criminal case brought against him arising out of this incident.

For the reasons set forth in this opinion, we affirm the arbitrator's award of back pay without offset and the granting of counsel fees for the criminal proceeding, but reverse that

portion of the award granting counsel fees incurred by the Association for the arbitration proceeding.

## ORDER

AND NOW, this 30th day of November, 1993, the award entered by Arbitrator Peter Florey on December 10, 1990, is affirmed in part and reversed in part. We affirm that portion of the award holding that Corporal Chatman was not dismissed for cause and shall be reinstated with full seniority and with back pay without any offset; reverse that portion of the award reimbursing Chatman for counsel fees generated by representation at the arbitration proceedings; and affirm that portion of the award ordering reimbursement of attorneys fees for representation of Chatman in the criminal proceedings.

Jurisdiction relinquished.

DOYLE, Judge, concurring and dissenting.

While I concur in the result reached by the majority to reinstate Corporal Chatman and award him backpay without offset, I disagree with the result reached by the majority to deny Corporal Chatman recovery of his counsel fees for representation during the arbitration proceedings, including the appeal to this Court, and with the conclusion of the majority affirming the arbitrator's award of counsel fees incurred in the criminal proceedings. And, as in this Court's decision in *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993) (*Betancourt*), the overriding issue of consequence is the majority's resolve to overrule the past precedent of this Court [1] and what

---

1. *See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 140 Pa.Commonwealth Ct. 235, 592 A.2d 779 (1991) (*Boykins*), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991); *City of Philadelphia v. Fraternal Order of Police Lodge No. 5*, 125 Pa.Commonwealth Ct. 625, 558 A.2d 163 (1989) (*Young*); *City of Philadelphia v. Fraternal Order of Police Lodge No. 5*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989) (*Wilson*); *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 120 Pa.Commonwealth Ct. 610, 549 A.2d 1014

I believe is a precedential decision of our Supreme Court,[2] when the majority abandons the narrow certiorari standard of judicial review over Act 111 [3] grievance arbitration awards and adopts the much more liberal "essence test" standard applied in awards involving Act 195 [4] municipal employees and private sector employees.[5] And, as will be discussed herein, the choice of which standard to apply determines, in many instances, the result reached by the reviewing court.

Initially, however, I believe it will provide some additional insight by reference to a small excerpt from the arbitrator's complete opinion [6] to understand what occurred in Cpl. Chatman's case and what lay at the bottom of Arbitrator Florey's decision, keeping in mind also the remarks of Judge Callan (majority op. p. 791, n. 3) in dismissing the criminal charges against the State Trooper:

> [T]he Department failed to produce *any* testimony supporting its accusation that Cpl. Chatman picked up the Slim Jim mugs in the Hyndman Post, and we have to accept his

(1988) (*Christy*); *City of Carbondale v. Fraternal Order of Police Lodge 63*, 109 Pa.Commonwealth Ct. 325, 531 A.2d 76 (1987) (*Barbaro*); *Allegheny County Police Ass'n. v. County of Allegheny*, 100 Pa.Commonwealth Ct. 327, 514 A.2d 964 (1986), *appeal dismissed*, 516 Pa. 17, 531 A.2d 1108 (1987).

**2.** *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 526 Pa. 301, 586 A.2d 355 (1991) (*Bojanowski*), *affirming per curiam* the opinion of this court which held that the scope of review of an arbitrator's award under Act 111 (disciplinary grievance) was narrow certiorari, *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 137 Pa.Commonwealth Ct. 1, 586 A.2d 459 (1989) (*Bojanowski*).

**3.** Act of June 14, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10 (Act 111).

**4.** Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101—1101.2301.

**5.** The "Steelworkers Trilogy," three decisions of the Supreme Court of the United States handed down on the same day in 1960, *viz.*, *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**6.** Arbitrator Florey filed his actual award on December 10, 1990, but due to computer problems his full decision, including the findings and conclusions, was not filed until December 26, 1990.

recollection that Manion, who reportedly had a large collection of mugs at home, placed them in the cab. Obviously, Manion was a crucial witness for the Commonwealth, but he was not called although he attended the arbitration.

Finally, all the Department witnesses agreed that Manion distributed the plastic mugs after they were discovered in the cooler and that Cpl. Chatman gave orders for their destruction. This testimony does not reflect any criminal intent on his part.

Dismissal of Cpl. Chatman and his criminal prosecution was not only without cause but constituted such an abuse of authority that this blot has to be removed from his career effectively by entering an appropriate award.

This is not a case in which the Department made a good-faith selection of facts from conflicting testimony. The innocence of Cpl. Chatman was established by its own witnesses! Even in the interview conducted by Lt. Zenk, Cpl. Chatman did not make a clear-cut admission that there had been a theft, but only agreed with his coercive suggestions. Under these circumstances, I have to agree with the FOB that Cpl. Chatman was labeled a thief deliberately and falsely.

Therefore, as requested by the Fraternal Order of Police, an order is entered which not only returns Cpl. Chatman to the force and makes him whole for all moneys lost without any offset but also restores his integrity and reputation as a bearer of the Medal of Honor in the eyes of his fellow officers and of the community.

For this reason, an award is entered which takes the unique and unusual circumstances of this case into account. Cpl. Chatman is not only reinstated with full seniority and back pay without any offsets but, borrowing a page form the book of Federal labor relations, the Commonwealth is also ordered to bear the expenses of the legal defense both in the arbitration and in Criminal Court because the two proceedings are inextricably intertwined. The transcript of the disciplinary interview shows that Lt. Zenk used the threat of criminal prosecution on which the Department

made good in an effort to coerce a confession from Cpl. Chatman.   (Emphasis in original.)

### *"Just Cause" Cases*

The decision of which standard of judicial review to apply is critical, because the result in a "just cause for discipline" case can differ depending upon whether the grievance arbitration award is reviewed under the Uniform Arbitration Act (UAA) [7] standards or under the narrow certiorari review standard. This difference is manifest in the "just cause for discipline" cases where an arbitrator determines that a grievant committed the acts which led to the imposition of discipline by the employer, but also further determines that such acts do not constitute "just cause" *for the discipline* imposed, and, as a result, substitutes either some lesser punishment or no punishment at all.   A recurring issue in this situation is whether the arbitrator exceeded his or her authority in substituting a penalty or in overriding the employer's decision as to the appropriate discipline for the conduct which the arbitrator found had occurred.

In grievance arbitrations under Act 195, the application of the UAA error of law/judgment n.o.v. standard of review frequently results in the reversal of the arbitrator's determination of no just cause for discipline.   *See, e.g., Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (award was not rationally derived from CBA where arbitrator found grievant guilty of theft and other crimes against the employer, but considered other mitigating factors in determining there was no "just cause" for his discharge, and substituted a lesser penalty); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988) (award was not rationally derived from CBA which clearly retained employer's right to determine appropriate punishment for serious misconduct, where, despite the fact that the arbitrator found grievants to have engaged in charged abusive conduct to an inmate of the prison, including assaultive behavior, arbitrator also considered certain mitigating factors to find no "just cause"

7.   42 Pa.C.S. §§ 7301–7320.

for dismissal, and substituted a lesser penalty); *Philadelphia Housing Authority v. Union of Security Officers*, 500 Pa. 213, 455 A.2d 625 (1983) (award was not rationally derived from CBA where arbitrator found that grievant, a PHA security officer, had committed criminal fraud against a PHA tenant, but found no "just cause" for dismissal and substituted a lesser penalty); *Manheim Central Education Ass'n. v. Manheim Central School District*, 132 Pa.Commonwealth Ct. 94, 572 A.2d 31, *petition for allowance of appeal denied*, 525 Pa. 661, 582 A.2d 326 (1990) (award was not rationally derived from CBA where arbitrator found charged immoral conduct of grievant to have occurred, but found no "just cause" for dismissal and substituted a lesser penalty).

On the other hand, the greater judicial deference owed an arbitrator in Act 111 grievance arbitrations will result in upholding such an award. In this context, we have upheld the arbitrator's finding of no "just cause" for dismissal even though the arbitrators found that the charges of misconduct had occurred. *See, e.g., Young*, 125 Pa.Commonwealth Ct. at 630, 558 A.2d at 164–65 (arbitrator did not exceed his authority in ruling that, although grievant had committed the charged assaultive behavior, other factors mitigated against a finding of "just cause" for her dismissal which the arbitrator found justified a lesser penalty); *Wilson*, 129 Pa.Commonwealth Ct. at 399–401, 565 A.2d at 1235–37 (arbitrator did not exceed his authority in ruling that, although grievants had committed the charged unbecoming conduct in failing to cooperate with an internal investigation, such conduct did not provide "just cause" for dismissal and the arbitrator imposed a lesser penalty).

In these opinions, *i.e., Young* and *Wilson*, this Court has explained that where an arbitrator finds the charged misconduct to have occurred, but determines such misconduct did not constitute "just cause" for dismissal and substitutes a lesser penalty, such a "definition or standard of 'just cause' amounts to, at most, *a mere error of law.*" *Young*, 125 Pa.Commonwealth Ct. at 630, 558 A.2d at 165. Such action, "while perhaps an error of law, and therefore subject to judicial

review and reversal under the UAA, is beyond this Court's power to correct because of our limited scope of review where the standard is narrow certiorari." *Wilson,* 129 Pa.Commonwealth Ct. at 398, 565 A.2d at 1236. Penalty substitution or a determination that no penalty is justified is *not* an act in excess of the arbitrator's authority which would warrant reversal under the narrow certiorari standard. *Id.* 129 Pa. Cmwlth. at 401, 565 A.2d at 1237. *Cf. Manheim Central,* 132 Pa.Commonwealth Ct. at 103, 572 A.2d at 36 (in penalty substitution/"just cause" cases, "it is not unusual for a result to be upheld in an Act 111 case that would not be permitted under Act 195").

### Arbitrator's Determination of "Just Cause"

Arbitrator Florey's detailed opinion supporting his award does not explicitly find that Chatman violated any of PSP's field regulations. However, the opinion recognizes that Chatman admitted the disposition of the seized property did not technically comply with those regulations. Arbitrator's Opinion at 13. Nevertheless, Arbitrator Florey found that Chatman's intentions on May 4, 1988, were motivated by his desire to "ease into" his position as commander of the LEOs and to avoid "rocking the boat" as he gathered information about existing enforcement practices.

Moreover, the arbitrator found that PSP acted in bad faith in filing criminal charges against Chatman alone and in dismissing him, and that the PSP deliberately and falsely branded Chatman a thief. The arbitrator also intimated that PSP's actions may have been motivated by, or initiated because of, racial animus toward Chatman. Arbitrator Florey evaluated Chatman's violation of PSP's filed regulations in light of these mitigating circumstances, and in light of impressive character evidence in his behalf,[8] held that Chatman "was not dismissed

8. The character witnesses demonstrated that Chatman had given his "time and talents generously to community affairs, especially to work with boys." Arbitrator's Opinion at 1. These witnesses included neighbors, state troopers, a captain in the Salvation Army, a director of a Girl Scout Council, administrators from the University of Pittsburgh at Johnstown and a Chief of Police. Additionally, Chatman was one of

for cause" and that there was no "just cause" for any discipline.

Under the "narrow certiorari" standard, which I maintain should be the applicable standard, *see Betancourt*, there is no difficulty in upholding the arbitrator's determination of no "just cause" for discipline in this case. The parties agree that they submitted the issue of whether there was "just cause" for discipline, and the arbitrator decided that issue in favor of Chatman. It was well within the arbitrator's authority under the CBA to consider the substantial mitigating factors in this case (regarding Chatman's exemplary record on the force and in the community, his good faith intentions on May 4, 1988, and PSP's bad faith in prosecuting and dismissing Chatman), in concluding that his admitted departure from PSP's field regulations on disposition of seized property did not constitute "just cause" for dismissal or other discipline.

The parties collectively bargained for the arbitrator's interpretation of their agreement, not the Court's. Therefore, even if we might have interpreted the agreement and the facts differently (which is not to say that I would), the arbitrator's interpretation did not exceed the exercise of his authority and this Court is obliged to uphold his determination.

### Legality of Remedies Awarded

Although the parties agree they submitted the issue of whether there was "just cause for discipline" to the arbitrator, they do not agree as to the scope of their submission regarding the potential remedies that the arbitrator could award if he found no just cause. The CBA provides that the "arbitrator shall confine himself/herself to the *precise issue submitted* for arbitration and shall have no authority to determine any other issues not so submitted to him/her." Article XXVIII, Step 4 (R.R. at 77a) (emphasis added). However, the record

only seven state police officers to have received the Pennsylvania State Police Medal of Honor. We note that evidence of good character or reputation may, in and of itself, create a reasonable doubt of guilt of criminal charges and compel a verdict of not guilty. *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989).

does not support either party's contention as to the "precise issue" of remedies that was submitted to Arbitrator Florey.

PSP states that the issues submitted to the arbitrator were: "Whether there was 'just cause' for the dismissal of Cpl. Chatman from the State Police, and, if not, what the appropriate *penalty* should be." Brief for Petitioner at 8. The FOP states that the issues presented to the arbitrator were: "[ (a) ] was grievant disciplined for just cause; and (b) if not, what should the *remedy* be." Brief for Respondent at 20. The CBA neither authorizes nor prohibits the arbitrator from awarding appropriate remedies for a grievant who has been improperly dismissed or discharged. Further, the different phrasing of the issue ("penalty" vs. "remedy") strikes me as perhaps being just opposite sides of the same coin depending on whether you find some fault (in which case a "penalty" may be called for) or no fault (in which case a "remedy" would be appropriate).

Further, the arbitrator's decision itself does not specifically identify the precise issues submitted. However, Arbitrator Florey indirectly addressed the submission of remedies issue when he stated "as requested by the Fraternal Order of Police, an order is entered which not only returns Cpl. Chatman to the force and makes him whole for all monies lost without any offset but also restores his integrity and reputation...." Arbitrator's Opinion at 15.

It appears from the sparse record before us that the issue of available remedies *generally* was in fact before the arbitrator, although there was no formal submission of issues on this record. Therefore, the Court must analyze the various remedies ordered by Arbitrator Florey in favor of Chatman to determine if they exceeded the arbitrator's authority.

### Back Pay Without Offset

The arbitrator reinstated Chatman with full seniority and ordered "back pay without any offsets" in order to make Chatman "whole." Arbitrator's Opinion at 15–16. The PSP concedes that back pay is an appropriate remedy if the

arbitrator's determination of no "just cause" is upheld, but argues that there was no basis upon which the arbitrator could make such an award because the issue of whether PSP was entitled to an offset was not raised at the arbitration hearing. Accordingly, PSP suggests that this "unique relief (back pay without offset) went beyond the submission of issues to the arbitrator and exceeded the arbitrator's authority in deciding issues that were not presented. *See, e.g., Boykins* (an arbitrator who goes beyond the submission of the parties to address an issue exceeds the exercise of his authority under the narrow certiorari standard of review).

Awards in back pay without offset for unemployment compensation benefits received have been approved in the federal labor arbitration context. *National Labor Relations Board v. Gullett Gin Co.,* 340 U.S. 361, 364–65, 71 S.Ct. 337, 339–40, 95 L.Ed. 337 (1951); *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77, 82–82 (3d Cir.1983). According to parties, there are no Pennsylvania cases on point, and I have found none. The CBA neither permits nor prohibits an award of back pay without offsets. *At most,* an arbitration award under Act 111 ordering back pay without offset would be a mere error of law. As I have already stated, such an award is not reviewable by this Court under the narrow certiorari standard of review and *on that basis* I would affirm Arbitrator Florey's award on this issue.[9]

9. In light of the finding that PSP acted in bad faith in filing false criminal charges against Chatman, it might be arguable that the award of back pay without offset *could be considered* as in the nature of punitive damages. An award of punitive damages against a Commonwealth agency might well be in excess of an arbitrator's authority. *See generally Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986) (disallowing punitive damages against Commonwealth agencies); *Township of Bensalem v. Press,* 93 Pa.Commonwealth Ct. 235, 501 A.2d 331 (1985) (disallowing punitive damages against a municipality). However, the issue of whether back pay without offset constitutes punitive damages beyond the authority of a grievance arbitrator under Act 111 is not properly before us, because PSP presented no evidence that Chatman secured substitute employment of otherwise received benefits such as unemployment compensation that could be set off against his award of back pay. In short, it is equally possible that the arbitrator awarded back pay without offset because PSP did not prove any alleged offset. Furthermore, if, in fact, Chatman received unemployment compensa-

## Counsel Fees—Arbitration Proceedings

The CBA establishes the grievance procedure in Article XXVIII, Section 1, which contains the following language:

> All fees and expenses of the arbitrator shall be divided equally between the parties. *Each party shall bear the cost of preparing and presenting its own case.* Either party desiring a record of the proceedings shall pay for the record and make a copy available without charge to the arbitrator. (Emphasis added.)  (R.R. at 87a).

The CBA explicitly provides that a member's counsel fees in *criminal* cases be paid, Art. XXVII, § 1, but conspicuously does not provide that PSP shall pay a grievant's counsel fees for presentation in a grievance arbitration proceeding. To the contrary, the provision that "each party shall bear the cost of preparing and presenting its own case" indicates that each party is responsible for their own attorney's fees at the arbitration proceeding. However, from the arguments it would seem to me to indicate that both parties intended that the issue of counsel fees for the arbitration proceeding should be submitted to the arbitrator. It is at this point that our standard of review is of critical importance because, even if the original intent of the parties in the CBA was for each side to bear his or its own costs, and Arbitrator Florey found counter to that intent and awarded such counsel fees, if it is in error, it is a non-reviewable error of law. Again, as articulated in *Wilson,* such a mere error of law must be extracted from our judicial review. It was certainly not beyond the authority of the arbitrator to determine that the CBA did not *prohibit* such an award, although the *general* provision of the CBA was to the contrary.

tion benefits while he was dismissed from the PSP, he would be liable to reimburse the Unemployment Compensation Fund for unemployment compensation benefits received. Section 804 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 874(b)(3). This statutory liability is not affected by the arbitrator's failure to provide for an express offset against the back pay award.

## Counsel Fees—Criminal Proceedings

Arbitrator Florey awarded Chatman reimbursement for attorney's fees for the criminal proceedings in addition to counsel fees for the related arbitration proceedings. If the only remedy issue submitted was whether Chatman should be reinstated with full back pay and made whole *for the arbitration proceeding,* then it would be in excess of the arbitrator's powers under the agreement to award counsel fees in defending the criminal charges, a wholly unrelated proceeding. How then to determine whether this issue was also submitted to the arbitrator?

The CBA, of course, contains a specific provision for payment of such fees for legal counsel, subject to certain conditions. Article XXVII, Section 1 states: "If a member is charged with a criminal action arising from the performance of his/her duties, he/she shall select local counsel in consultation with his/her Commanding Officer. The Commonwealth shall pay for the fees of such counsel to the extent the fees are in line with prevailing rates in the area." (R.R. at 75a). But, the problem I face is that I cannot determine from anything that went either before the arbitration, or before the arbitrator, that the issue was submitted for arbitration. On the contrary, there is a complete dearth of findings on anything at all dealing with the criminal proceedings; for example, who represented Chatman and what his counsel's fees were. While I am able to glean at least *some* evidence, however small, that the parties meant by inference to submit the issue of reimbursement for attorney's fees in the grievance arbitration proceeding to the arbitrator, I cannot discern by any manner or means, even by inference, that they meant to submit the separate and distinct issue of reimbursement for counsel fees in the criminal proceeding to Arbitrator Florey. I am compelled to conclude, therefore, that the arbitrator exceeded his authority in awarding such fees. *Boykins.*

I certainly disagree that where there is no record evidence as to the intent of the parties, that this Court may *assume* that the arbitrator had jurisdiction over the issue, as does the majority. I believe that to assume such authority on behalf of

the arbitrator is to assume away that which is at the very core of what must be proven, or established by inference as to what the parties intended. Such a notion is certainly contrary, in my opinion, to what this Court established in *Boykins* where we held:

> Because the arbitrator in the present appeal did not rule on whether the City complied with the suspension and dismissal procedures set forth in the collective bargaining agreement, but instead ruled on the due process issue raised by the FOP, an issue that was not before the arbitrator in the bifurcated arbitration proceeding, the arbitrator exceeded this authority under the collective bargaining agreement. Accordingly, the trial court should have vacated the arbitration award.

*Id.,* 140 Pa.Commonwealth Ct. at 241, 592 A.2d at 782.

Accordingly, I would vacate the award of Arbitrator Florey with respect to counsel fees in the criminal proceedings, as did Judge Pellegrini similarly writing for the Court in *Boykins.*

**FRATERNAL ORDER OF POLICE, LODGE NO. 5, Appellee.**