**DEPARTMENT OF CORRECTIONS AND DEPARTMENT OF PUBLIC WELFARE, Petitioners**

v.

**PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2006.

Decided Sept. 10, 2007.

Patrick J. Harvey, Philadelphia, for petitioners.

Stephen J. Holroyd, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania, Department of Corrections and Department of Public Welfare (Commonwealth), petition for review of an interest arbitration award issued by a panel of arbitrators (Panel) pursuant to Section 805 of the Public Employe Relations Act (Act 195).[1] The award set forth the terms of a collective bargaining agreement effective July 1, 2005, between the Commonwealth and the Pennsylvania State Corrections Officers Association (Association). In this case we consider whether the Panel exceeded its authority by directing the Commonwealth to provide legal representation to correc-

1. Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.805.

tions employees in any legal proceeding arising from employment-related conduct, even criminal and malicious conduct, and to indemnify them against civil judgments resulting from such conduct. For the reasons set forth below, we vacate this part of Panel's award.

The Association represents approximately 9400 corrections personnel, who are employed in the care, custody and control of inmates at State Correctional Institutions and patients at state mental hospitals. The Association and the Commonwealth were parties to a collective bargaining agreement effective from July 1, 2001, to June 30, 2004 (2001 CBA). Pertinent to this appeal is Article 33, Section 21 of the 2001 CBA, which provided bargaining unit members legal representation and indemnification for civil judgments in some, but not all, proceedings brought against them.

In civil cases brought against members of the bargaining unit, Article 33, Section 21 of the 2001 CBA provided as follows:

> The Employer [Commonwealth] shall provide liability coverage and legal defense in civil suits as detailed in Title 4 PA Code Chapter 39 [Defense of Suits Against Commonwealth Employees] and Management Directives 205.6 and 630.2. Reproduced Record at 59a (R.R. ——).

Under Chapter 39, employees are provided counsel in civil cases where their conduct is alleged to be unintentional, but if their conduct is alleged to be malicious or intentional, it is discretionary with the General Counsel whether to provide the employee defense and indemnification.[2]

In criminal cases brought against members of the bargaining unit, the 2001 CBA authorized the Commonwealth to provide the member with counsel; if it did not, then the Commonwealth was required to advance reasonable attorney fees. Were the member convicted of the crime, legal fees advanced would be recovered from the member employee's retirement account. *Id.* If the member was acquitted by the jury, the Commonwealth was responsible for all reasonable attorney fees. If the employee's criminal defense was successful on some other basis, then attorney fees were reimbursable to the extent determined by the Commonwealth to be appropriate.

Prior to the expiration of the 2001 CBA, the parties engaged in collective bargaining. When they were unable to reach an

---

**2.** Title 4, Chapter 39, Subchapter A of the Pennsylvania Code provides that the Commonwealth shall provide an employee with an attorney when the employee is

> sued in his official or individual capacity for alleged negligence or other unintentional misconduct occurring while in the scope of employment.

4 Pa.Code § 39.2. In civil cases involving intentional or malicious conduct, the Commonwealth will defend the employee and indemnify him for the cost of a judgment against him if it appears to the General Counsel that

> the defendant's conduct giving rise to the cause of action was within the scope of his employment and a good faith exercise of his authority.

4 Pa.Code § 39.3(a). If the General Counsel determines that the defendant's conduct was a bad faith exercise of his authority, malicious or *outside the scope of his employment,* the General Counsel, in his sole discretion, will determine whether the Commonwealth will undertake the defense of the defendant [and][t]he Commonwealth will not indemnify the defendant for a judgment against him.

4 Pa.Code § 39.3(b)(1) (emphasis added). The General Counsel may authorize the payment of private attorney fees if the defendant ultimately prevails in a civil action, notwithstanding the General Counsel's initial determination .that the defendant's conduct was a bad faith exercise of his authority, malicious or outside the scope of his employment. 4 Pa.Code § 39.3(b)(2).

agreement on a successor contract, they submitted their dispute to binding interest arbitration in accordance with Section 805 of Act 195, 43 P.S. § 1101.805.[3] Interest arbitration hearings were held over fourteen days between March and June 2005. Each side presented evidence on a number of issues, including the one that led to this petition for review.

The Association was unhappy with Article 33, Section 21 of the 2001 CBA, arguing that it gave the Commonwealth unfettered discretion to decide whether to provide employees with legal representation and indemnification, making the benefit almost illusory. The Association presented evidence that in 2002 over 1,500 lawsuits were filed against employees in the bargaining unit. Some of these suits included criminal charges that were dismissed; however, the requests for reimbursement of legal fees were denied by the Commonwealth because the 2001 CBA required acquittal after a full jury trial. The Association also presented two examples where two bargaining unit members each spent over $25,000 to defend civil complaints filed by inmates that were eventually settled or dismissed without trial. However, the employees were not reimbursed for their attorney fees. The Association proposed changes to Article 33, Section 21 of the 2001 CBA that would require the Commonwealth to provide legal representation to employees in any civil or criminal case, regardless of whether the conduct in the workplace was alleged to be malicious or negligent.

The Commonwealth opposed the Association's proposed changes. The Chief Counsel for the Department of Corrections testified, *inter alia*, that the proposed changes were contrary to the regulations of the Executive Board, the agency responsible for determining when a Commonwealth employee's expenses can be reimbursed. The Chief Counsel explained that "4 PA Code Section 39.1 simply prohibits Commonwealth lawyers from representing employees in criminal matters." *Notes of Testimony* (N.T.) 6/14/05, at 7; R.R. 446a. This prohibition aims to avoid the conflict of interest presented by the Commonwealth prosecuting a defendant of alleged crimes and, at the same time, defending against those charges. Nevertheless, where a prosecution is found to be unfounded, the Commonwealth will pay the legal fees of a private attorney. The Chief Counsel testified that it was rare that a Commonwealth employee was not reimbursed for his legal expenses under 4 Pa.Code § 39.1.

The Chief Counsel also testified that employees are almost always defended and indemnified in civil cases, explaining the circumstances behind the two cases cited by the Association where the employee was denied attorney fees. These were the only two cases where, in the Chief Counsel's experience over the last seven years, attorney fees were denied. In the first case, the General Counsel disapproved Corrections Officer Kenneth Klaus' request for reimbursement because the Commonwealth had a videotape of Klaus

---

3. Section 805 states as follows:

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only. 43 P.S. § 1101.805.

striking an inmate in the face with his knee during a strip search.[4] In the second case, involving an inmate's allegations of sexual harassment against, *inter alia,* Corrections Officer Carlos Riera, the General Counsel disapproved Riera's counsel fees because they were excessive. The Chief Counsel refuted the Association's argument that Chapter 39 gave unfettered discretion to the Commonwealth. He explained that the General Counsel's denial of indemnification and reimbursement for legal representation can be appealed to an administrative hearing. Thereafter, it is reviewable by the Commonwealth Court and the Pennsylvania Supreme Court.[5]

The Panel issued its award on January 31, 2006. In Paragraph 18 of its award, the Panel adopted verbatim the Association's proposed amendatory language to Article 33, Section 21 of the 2001 CBA. The award states as follows:

a. If a bargaining unit member is charged with a criminal action arising from the performance of his/her duties, he/she shall select local counsel in consultation with the Commonwealth. The Commonwealth shall pay for the fees of such counsel to the extent the fees are in line with prevailing rates.

b. If a bargaining unit member is a defendant in a civil suit arising from the performance of his/her duties, the Commonwealth shall immediately furnish counsel and defend the member.

c. The Commonwealth shall be responsible for judgments rendered against the member in job-related suits where the bargaining unit member has acted within the scope and responsibility of his/her office.

Award at 10, Paragraph 18.[6] The Commonwealth now petitions this Court to vacate Paragraph 18 of the interest arbitration award.

Before this Court,[7] the Commonwealth argues that the Panel exceeded its authority by requiring the Commonwealth to do that which is specifically prohibited by law as set forth in 4 Pa.Code §§ 39.1–39.3. The Association counters that the Commonwealth has waived this issue and, alternatively, that the provisions contained in 4 Pa.Code §§ 39.1–39.3 are statements of policy, not regulations, and as such do not have the force and effect of law.

We address, first, the Association's threshold argument that the Commonwealth never argued before the Panel that adopting the Association's proposed

---

4. The case against Klaus was ultimately dismissed for lack of prosecution by the complaining inmate.

5. *See* 4 Pa.Code § 39.12(c) (administrative appeal process for employee who is dissatisfied with amount of advancement or reimbursement of legal fees in criminal case); 4 Pa.Code § 39.13(d) (administrative appeal process if General Counsel denies employee's request for legal representation or reimbursement of legal fees in civil matter, or determines that employee is not entitled to indemnification for the expense of a judgment or settlement).

6. The Commonwealth-appointed arbitrator, H. Thomas Felix II, dissented from Paragraph

18 of the award "as being contrary to the laws of the Commonwealth and not within the jurisdiction of the Panel." Award at 14.

7. Appeals from mandatory interest arbitration under Section 805 of Act 195 are limited to review in the nature of narrow certiorari. *Fraternal Order of Police, Lodge No. 5 ex rel. Costello v. City of Philadelphia,* 725 A.2d 206, 210 (Pa.Cmwlth.1999). The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) whether the arbitrators exceeded their powers; and (4) deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association,* 540 Pa. 66, 71, 656 A.2d 83, 85 (1995).

changes would exceed the Panel's authority. We conclude that this waiver argument lacks merit.

The record reveals that the Commonwealth objected to the legality of the language proposed by the Association at several points in the arbitration proceedings. The Chief Counsel explained in detail the requirements of the Pennsylvania Code and stated that the Commonwealth is "prohibited" from representing employees in criminal matters. R.R. 460a–461a. The Commonwealth provided copies of 4 Pa. Code § 39.1 to the Panel, which specifically states that "[t]he Commonwealth will not provide an attorney to defend a present or former official or employe in a criminal case...." R.R. 583a. The Commonwealth raised the issue in its post-hearing brief and stated again that Chapter 39 "prohibited" it from representing employees in criminal matters. R.R. 813a–814a. These arguments were made to advance the claim the Panel lacked authority to issue an award that would compel the Commonwealth to violate the law. Finally, and perhaps most significantly, the Commonwealth's appointed arbitrator dissented from Paragraph 18 of the award as being, *inter alia,* "contrary to law." In sum, the issue of the Panel's authority was raised, not waived, by the Commonwealth.

■ We turn, next, to the merits of the Commonwealth's issue on appeal: whether the Panel's award requires the Commonwealth to perform acts prohibited by law. It is well settled that an arbitration panel's powers are limited; it may not mandate that a public employer perform an illegal act, *i.e.,* an act that is prohibited by law or is not within the employer's authority. *Appeal of Upper Providence Police Delaware County Lodge No. 27*

*Fraternal Order of Police,* 514 Pa. 501, 513, 526 A.2d 315, 321 (1987). In addition, a panel may only require a public employer to do that which the employer could do voluntarily. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt),* 540 Pa. 66, 79, 656 A.2d 83, 90 (1995).

■ The crux of this case is the precise nature of Chapter 39 of Title 4 of the Pennsylvania Code. The Commonwealth contends it is a regulation with the force of law, and the Association contends it is a mere statement of policy.

We begin with a consideration of the differences between a regulation and statement of policy. Section 102 of the act commonly referred to as the Commonwealth Documents Law [8] defines a "regulation" to be

> any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.

45 P.S. § 1102(12). Conversely, a "statement of policy" is defined as:

> any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof and includes ... any document interpreting or implementing any act of Assembly enforced or administered by such agency.

45 P.S. § 1102(13).

Whether a provision in the Pennsylvania Code [9] is a regulation or statement of poli-

---

**8.** Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602.

**9.** A statement of policy can be published in the Pennsylvania Code, but it is not required

cy has important implications for a reviewing court. As our Supreme Court recently explained in *Tire Jockey Service, Inc. v. Department of Environmental Protection*, 591 Pa. 73, 108–09, 915 A.2d 1165, 1186 (2007) (footnote and citations omitted),

> when an agency adopts a regulation pursuant to its legislative rule-making power, as opposed to its interpretive rule-making power, it is valid and binding upon courts as a statute so long as it is (a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable.

By contrast,

> a statement of policy is a governmental agency's statutory interpretation, which a court may accept or reject depending upon how accurately the agency's interpretation reflects the meaning of the statute.

*Central Dauphin School District v. Department of Education*, 147 Pa.Cmwlth. 426, 608 A.2d 576, 581 (1992) (footnote omitted).

In analyzing whether an agency pronouncement is a statement of policy or a regulation, "the starting point is generally the agency's own characterization of the rule." *Id.* In this case, the agency promulgating Chapter 39 has always characterized Chapter 39 as a regulation. Indeed,

as will be further developed in this opinion, the Executive Board can act only through a formal rule or regulation. In addition, application of all three *Tire Jockey Service* criteria leads to the inescapable conclusion that Chapter 39 is a regulation.

██  First, the Executive Board acted within its legislatively granted power. Section 709(f) of the Administrative Code of 1929 [10] authorizes the Executive Board

> *[t]o make rules and regulations* providing for travel, lodging and *other expenses* for which all officers and employes of the executive branch of the State Government may be reimbursed.

71 P.S. § 249(f) (emphasis added). Legislative rule-making is "the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the Legislative body." *Girard School District v. Pittenger*, 481 Pa. 91, 95, 392 A.2d 261, 262 (1978) (citing Kenneth C. Davis, 1 ADMINISTRATIVE LAW TREATISE § 5.03, at 299 (1958 ed.)).[11] Here, the Executive Board promulgated Chapter 39 in accordance with its express legislative authority to establish the rules by which Commonwealth employees will be reimbursed for expenses incurred "in the performance of their public duties." 71 P.S. §§ 76, 249(f).[12] In the absence of

---

to be published. By contrast, a regulation must appear in the Pennsylvania Code.

**10.** Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 249(f).

**11.** By contrast, "where no power has been delegated to the agency to make law through rules, the agency's public statements of what it will do in enforcing or in adjudicating may be deemed 'interpretative rules.'" Kenneth C. Davis, 1 ADMINISTRATIVE LAW TREATISE § 5.03, at 127 (1972 ed.). A reviewing court will normally accord the interpretation of the agency some deference. *Girard School District*, 481 Pa. at 95, 392 A.2d at 263. However, because the meaning of a statute is essen-

tially a question of law for the reviewing court, the validity of an interpretative rule depends upon the willingness of the court to say that it in fact tracks the meaning of the statute it interprets. *Id.*

**12.** *See also Tire Jockey Service*, 591 Pa. at 106, 915 A.2d at 1185 (finding that regulations of the Environmental Quality Board were *legislative* in nature because they were adopted under statutory duty to "adopt the rules, regulations, criteria and standards . . . to carry out the provisions' of the [Solid Waste Management Act].") (quoting 35 P.S. § 6018.105); *Girard School District*, 481 Pa. at 96, 392 A.2d at 263 (finding *legislative* rule was adopted by State Board of Education pursuant to provi-

such rule-making, expense reimbursement cannot take place.

■ Second, the Executive Board followed the proper procedure for adopting a regulation. Agency regulations must be promulgated pursuant to the notice and comment procedures contained in the Commonwealth Documents Law in order to have the force and effect of law. *R.M. v. Pennsylvania Housing Finance Agency of the Commonwealth*, 740 A.2d 302, 306 (Pa.Cmwlth.1999).[13] Here, the Executive Board published Chapter 39, entitled "Executive Board Regulations," in the Pennsylvania Bulletin on February 28, 1976, stating that it was promulgating Chapter 39 under the authority of Section 709(f) of the Administrative Code of 1929.[14] 6 PA. BULL. 389.[15] The prefatory language stated unequivocally that "[t]he following *regulation* shall be effective immediately upon publication in the Pennsylvania Bulletin." 6 PA. BULL. 389 (emphasis added). The Executive Board further advised that it

had omitted the notice of proposed rule making required under Sections 201 and 202 of the Commonwealth Documents Law, 45 P.S. §§ 1201–1202, in accordance with Section 204(1)(ii) of the Commonwealth Documents Law, 45 P.S. § 1204(1)(ii), because "this *regulation* relates only to Commonwealth organization, management or personnel matters." 6 PA. BULL. 389 (emphasis added).[16]

Each amendment to Chapter 39 has followed the procedures prescribed for formal rule-making. In 1994, Chapter 39 was amended to vest requests for legal representation in the General Counsel, whose duties were established in the then recently enacted Commonwealth Attorneys Act. The Executive Board made this amendment "under the authority of section 709(f) of The Administrative Code of 1929 (71 P.S. Sec. 249(f))," and stated that it had complied with all of the requirements of the Commonwealth Documents Law and the Regulatory Review Act.[17] 24 PA. BULL.

sion in Administrative Code of 1929 stating that Board "shall make all reasonable rules and regulations necessary to carry out the purposes of this act.").

**13.** The requirements under the Commonwealth Documents Law are quite stringent. An agency must

(1) give public notice of its intention to promulgate any administrative regulation by publication in the Pennsylvania Bulletin of a notice of proposed rulemaking that includes a statement of the statutory or other authority under which the regulation is being promulgated, 45 P.S. § 1201;

(2) accept, review and consider any submitted written comments, 45 P.S. § 1202;

(3) obtain legal approval of the proposed regulation, 45 P.S. § 1205; and

(4) deposit the text of the regulation with the Legislative Reference Bureau for publication, 45 P.S. § 1207.

*R.M.*, 740 A.2d at 306 n. 6.

**14.** The Executive Board also cited as authority former Section 903(b) of the Administrative Code of 1929, 71 P.S. § 293(b). That provision, which related to the powers and duties

of the Department of Justice, was repealed by the Act of October 15, 1980, P.L. 950.

**15.** Publication of any document in the Pennsylvania Bulletin or Pennsylvania Code creates a rebuttable presumption that (1) it was duly issued, prescribed or promulgated; (2) it was approved as to form and legality; and (3) there has been compliance with all applicable requirements of the Administrative Agency Law and the Commonwealth Documents Law. 45 Pa.C.S. § 905; 1 Pa.Code § 5.5.

**16.** This explanation would have been unnecessary had the Board been issuing a statement of policy. *See Woods Services, Inc. v. Department of Public Welfare*, 803 A.2d 260, 265 (Pa.Cmwlth.2002) (statement of policy need not be issued in accordance with the Commonwealth Documents Law).

**17.** Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1–745.15. The Regulatory Review Act provides a procedure for oversight and review of agency regulations adopted under the large number of statutes enacted by the General Assembly. 71 P.S. § 745.2.

5656. The Executive Board again followed these procedures when it amended Chapter 39 in 1996. 26 PA. BULL. 993.

■ Third, Chapter 39 is reasonable. Generally, appellate courts will find a regulation to be unreasonable only if it constitutes "a manifest or flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Tire Jockey Service*, 591 Pa. at 109, 915 A.2d at 1186. Under this deferential standard, the provisions at 4 Pa.Code §§ 39.1–39.3 establish standards for the provision of legal representation to, and indemnification of, Commonwealth employees. Under those standards, the Commonwealth bears the expense of a legal action unless the employee's conduct is intentional, malicious or not job-related.

Notably, even before the *Tire Jockey Service* decision, this Court consistently considered Chapter 39 to be a regulation. In *In re Request for Reimbursement on Behalf of Plevyak*, 83 Pa.Cmwlth. 81, 476 A.2d 487 (1984), attorneys who had successfully defended an employee of the Department of Public Welfare against criminal charges sought payment of their fees by the Department. We stated that the operative provision at 4 Pa.Code § 39.1(b) was a regulation "promulgated pursuant to the Administrative Code of 1929." Id. at 488. In a subsequent case involving a claim by prison guards for reimbursement of attorney fees, this Court referred to "Executive Board *regulations* at 4 Pa. Code §§ 39.1–4, which indeed do create a conditional entitlement in state employees to reimbursement for counsel fees." *Burroughs v. Zimmerman*, 94 Pa.Cmwlth. 307, 503 A.2d 1014, 1015 (1986) (emphasis added).

In sum, following our Supreme Court's directive in *Tire Jockey Service* and in accordance with this Court's precedent, we hold Chapter 39 to be a regulation, not a statement of policy. The provisions at 4 Pa.Code §§ 39.1–39.3 have the force and effect of law.

■ We consider, next, whether Paragraph 18 of the Panel's award compels the Commonwealth to violate the regulation at 4 Pa.Code §§ 39.1–39.3. We find that it does.

For criminal cases involving a member of the bargaining unit, Paragraph 18 of the Panel's award provides:

a. If a bargaining unit member is charged with a criminal action arising from the performance of his/her duties, he/she shall select local counsel in consultation with the Commonwealth. The Commonwealth shall pay for the fees of such counsel to the extent the fees are in line with prevailing rates.

Award at 10, Paragraph 18. The Panel's award conflicts with the regulation at 4 Pa.Code § 39.1 in two ways.

First, with respect to legal representation, the regulation states that [t]he *Commonwealth will not provide an attorney* to defend a present or former official or employee in a criminal case arising from acts or omissions occurring while in the service of the Commonwealth.

4 Pa.Code § 39.1(a) (emphasis added). Requiring the Commonwealth to consult with its employee on selecting an attorney and then paying that attorney's fee is tantamount to providing an attorney. To require the Commonwealth to do so for every Association member charged with a crime "arising from acts" occurring at the workplace violates 4 Pa.Code § 39.1(a).

Second, the regulation divests the General Counsel of discretion. The General Counsel must approve an employee's request for attorney fees in cases where she determines that there is not a basis for the

prosecution in law or fact. 4 Pa.Code § 39.1(a).[18] However, under Paragraph 18, the Commonwealth must "pay for the fees of [local] counsel to the extent the fees are in line with prevailing rates" even where the General Counsel concludes that the prosecution is meritorious. Award at 10; Paragraph 18.

For civil cases involving an Association member, Paragraph 18 of the Panel's award provides:

b. If a bargaining unit member is a defendant in a civil suit arising from the performance of his/her duties, the Commonwealth shall immediately furnish counsel and defend the member.

c. The Commonwealth shall be responsible for judgments rendered against the member in job-related suits where the bargaining unit member has acted within the scope and responsibility of his/her office.

Award at 10, Paragraph 18. Paragraph 18 effectively compels the Commonwealth to provide counsel and indemnify a member of the bargaining unit in any civil action arising from job-related conduct, even malicious and intentional conduct.

However, Chapter 39 mandates legal representation of a Commonwealth employee only where "sued in his official or individual capacity for alleged *negligence or other unintentional misconduct* occurring while in the scope of employment." 4 Pa.Code § 39.2 (emphasis added). Where the conduct is alleged to be *intentional or malicious*, the Commonwealth will defend and indemnify the employee only where the General Counsel finds that "the defendant's conduct giving rise to the

cause of action was within the scope of his employment and a *good faith exercise of his authority.*" 4 Pa.Code § 39.3(a) (emphasis added). If the General Counsel "determines that the defendant's conduct was a *bad faith exercise of his authority, malicious or outside the scope of his employment,*" the General Counsel may not authorize the payment of either a legal defense for the employee or a judgment entered against the defendant. 4 Pa.Code § 39.3(b)(1) (emphasis added).[19] In sum, paragraph 18 completely disregards the mandate in 4 Pa.Code §§ 39.2–39.3 that the General Counsel assess the nature of the employee's conduct before deciding whether it is appropriate to defend and indemnify an employee who is the subject of civil litigation.

The Panel exceeded its authority by divesting the General Counsel of the decision making she is required to undertake under Chapter 39. The Association's argument that there is a risk that the General Counsel will abuse her discretion rings hollow because every bargaining unit member can challenge the determination of the General Counsel. The member has an administrative appeal that is reviewable by this Court and by our Supreme Court, where further appeal is allowed.

■ We turn, then, to the dissenting opinion. Two issues were presented by the parties for decision by this Court: (1) whether Chapter 39 was a regulation or a statement of policy and (2) whether the arbitration award conflicted with Chapter 39. The dissent does not disagree with the majority's analysis on those two issues, the

18. Even if the General Counsel determines that there is a basis for the prosecution, she may nevertheless authorize the reimbursement of reasonable attorney fees if the employee's defense is successful. 4 Pa.Code § 39.1(b).

19. However, General Counsel may authorize the Commonwealth to reimburse the defendant for private attorney fees if the defendant ultimately prevails in a civil action. 4 Pa. Code § 39.3(b)(2).

only ones this Court has been requested to decide. The dissent quarrels with the majority's holding by raising a brand new issue: whether the arbitration award "requires a legislative enactment" to implement its terms. Dissenting Opinion at 374. It is error for an appellate court to raise an issue *sua sponte*.[20]

The dissent directs us to Section 805 of Act 195, which limits the power of arbitrators by stating that "the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only." Section 805 of Act 195, 43 P.S. § 1101.805. Section 805 has not been raised by the arbitrators, the Association or the Commonwealth, and it is beyond our purview to base our holding in this case upon Section 805. It is not just a theoretical concern. We do not have the benefit of the parties' briefs on this question, and there may be tactical reasons why the parties have not raised Section 805. The dissent oversteps the bounds of appellate review by opining in this regard.

That said, the award requires an amendment to the Administrative Code of 1929. Section 709(f) of the Administrative Code vests exclusive authority in the Executive Board to define, by regulation, what are "necessary expenses" that can be reimbursed. 71 P.S. § 249(f). Unless the Executive Board acts, in its sole discretion, to identify those "necessary expenses" that may be reimbursed, an expense associated with work is not reimbursable. In that situation, it must be assumed that the employee's salary covers his work-related expenses, whether for commuting, parking, dry-cleaning or defense of criminal charges brought for crimes committed in the workplace.[21]

In support of its Section 805 analysis, the dissent contends that the majority violates the principles of *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). Again, the Association did not raise *State College* or invoke its principles. However, we disagree that either legal representation or indemnification is a "term" of employment that must be negotiated under Section 701 of Act 195, 43 P.S. § 1101.701 (requiring collective bargaining "with respect to wages, hours and other terms and conditions of employment.").[22]

Expense reimbursements are not "forms of compensation" because at best they ensure a zero gain. Expenses are costs borne by employees that are incidental to work, and, as explained above, are reimbursable only "if actually incurred in the performance of their public duties . . . ." and defined by the Executive Board as necessary. Section 216 of the Administrative Code of 1929, 71 P.S. § 76. Reimbursement for attorney fees is not a "term" or "condition" of employment be-

---

**20.** The dissent suggests that the majority has conflated rationale with issue. It was incumbent upon the Association to raise Section 805 as an alternate ground to justify the panel's award. It did not. The dissent conflates the position of a litigant, *i.e.*, "do not vacate the award," with the concept of raising an issue, *i.e.*, the proposed legal ground for that position.

**21.** The dissent notes that the Executive Board also establishes vacation and sick leave rules.

There is a qualitative difference between compensation for sick leave and indemnification for civil judgment entered against a corrections officer who has kneed an inmate in the face.

**22.** For purposes of Act 195, " 'wages' means hourly rates of pay, salaries or other forms of compensation for services rendered." Section 301 of Act 195, 43 P.S. § 1101.301(14).

cause malicious or criminal conduct giving rise to the need for an attorney can never have been done "in the performance of public duties."[23] Under the dissent's logic, any provision that a bargaining unit might seek in a CBA is a "term or condition" of employment and, thus, must be negotiated.[24]

*Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83, 90 (1995), teaches that arbitrators may compel the public employer to do only what the public employer can do voluntarily. If any provision in a CBA is a term that must be negotiated, then *Betancourt* could never be invoked. Here, the public employer cannot be compelled to pay expenses unless, and until, they are defined as "necessary" by the Executive Board. Section 709(f) of the Administrative Code of 1929, 71 P.S. § 249(f).

For all the above-stated reasons, we hold that Paragraph 18 of the award exceeded the arbitrators' powers and must be vacated.

## ORDER

AND NOW, this 10th day of September, 2007, Paragraph 18 of the Act 195 Interest Arbitration Award of the Panel of Arbitrators in the above-captioned matter, dated January 31, 2006, is hereby VACATED.

## DISSENTING OPINION BY Judge PELLEGRINI.

When it enacted Section 805 of the Public Employees Relation Act (Act 195),[1] the General Assembly explicitly provided that an interest arbitration award would be "final and binding" unless it would require a "legislative enactment" to implement. The majority holds that payment of employee expenses is not a term of employment subject to collective bargaining, but that same executive members of the administration negotiating with the collective bargaining agent for the corrections officers

---

**23.** Kneeing an inmate in the face is not performing a "public duty" but giving vent to a private compulsion. The legislature has conferred upon the Executive Board the sole responsibility to define what expenses are "necessary" and incurred in the service of the Commonwealth and, thus, reimbursable. Under the Panel's award, however, any deed done by an employee at the workplace, even a murder, requires the Commonwealth to defend that employee against a criminal conviction. In a case of "meritless charges" brought against a corrections officer, the Commonwealth will pay for the legal fees of a private attorney. 4 Pa.Code § 39.1.

The dissent cites to *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994) and *Wiehagen v. Borough of North Braddock*, 527 Pa. 517, 594 A.2d 303 (1991), for the proposition that the Supreme Court requires the payment of legal fees in excessive force cases. These cases arose from the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8548(a), which requires indemnification of police officers for a civil judgment arising from work-

place conduct that is not willful misconduct. The cases did not require that legal fees be *advanced* by the municipality. Further, the statute bars indemnification for legal fees where the officer has committed willful misconduct, such as kneeing a person in the face.

**24.** Seniority and furlough are terms of employment. *See Abel v. City of Pittsburgh*, 890 A.2d 1 (Pa.Cmwlth.2005); *Pennsylvania State Corrections Officers Association v. State Civil Service Commission*, 900 A.2d 997 (Pa. Cmwlth.2006). In those cases, the union, on behalf of its members, gave up seniority and furlough rights that were established by statute for public employees. Here, the union is not giving up a statutory right but seeking the payment of legal representation and indemnification in circumstances prohibited by Chapter 39. Under the dissent's view, even if Chapter 39 were a statute, the Commonwealth and the Association may disregard Chapter 39's dictates.

**1.** Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.805

can, by instigating a regulation authorized by the Administrative Code, unilaterally decide if an expense is to be paid. It then goes on to hold that if the administration officials decide to reimburse an expense, they can unilaterally decide how much and under what conditions an employee is to be reimbursed, even if the amount reimbursed does not cover the employee's cost. Applying that reasoning to the award here, the majority sets aside an interest arbitration award that requires the Commonwealth to pay for counsel fee expenses incurred by a corrections officer because those fees are inconsistent with a regulation adopted by the public employer.

I respectfully dissent because that holding is in conflict with the legislatively-mandated scheme set forth in Act 195 that all matters related to employment are subject to collective bargaining as so holding. Specifically, I disagree with the majority because:

1. **A Regulation is not a "Legislative Enactment."** Under Section 805 of Act 195, an arbitration award is "final and binding" unless it requires a "legislative enactment" to be effective. Because a regulation adopted by the Executive Board is not a "legislative enactment," the arbitration award is final and binding.

2. **No Statute Prohibits the Award.** Under Section 703 of Act 195,[2] a condition of employment must be negotiated by an employer if it impacts wages, hours and other terms or conditions of employment unless applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment. Because there is no statutory prohibition against negotiating over legal representation, including in the Administrative Code, the

matter is subject to collective bargaining and arbitration.

3. **Reimbursement of Employee Expenses are Subject to Collective Bargaining Under Act 195.**

4. **The Award is Not Reviewable Under the Narrow Certiorari Test.** Because there is nothing that would foreclose the Commonwealth from providing legal representation set forth in the arbitration award, under the narrow certiorari test, the matter is not within our discretion to review.

### A.

In this case, involving an Act 195 bargaining unit, the Commonwealth of Pennsylvania, Department of Corrections (DOC) and the Department of Public Welfare (Commonwealth) were unable to reach an agreement on a successor collective bargaining agreement (CBA) to the 2001–2004 CBA on many issues, including representation of Pennsylvania State Corrections Officers Association (Association) members, some of which were corrections personnel, in legal proceedings (civil suits) arising from job-related conduct arising in the course and scope of their employment. The previous CBA had provided that the "Employer [Commonwealth] shall provide liability coverage and legal defense in civil suits as detailed in Title 4 PA Code Chapter 39 [Defense of Suits Against Commonwealth Employees] and Management Directives 205.6 and 630.2." (Reproduced Record at 59a.) As for criminal cases, the Commonwealth was permitted under the CBA to provide an employee with counsel; if it did not, then it was required to provide reasonable attorneys' fees to be recovered later from the employee's retirement account if the defense was ultimately un-

2.   43 P.S. § 1101.703.

successful. If the employee's defense was successful on a verdict following a jury trial, the Commonwealth was responsible for all reasonable attorneys' fees.

The parties submitted their dispute to binding interest arbitration and hearings were held before a panel of arbitrators. The Association argued that Article 33, Section 21 of the previous CBA provided the Commonwealth with unfettered discretion in determining whether to provide employees with a contractual benefit. It presented evidence that in 2002, over 1,500 lawsuits were filed, including suits involving criminal charges that were dismissed as frivolous. It stated that requests for reimbursement of legal fees were routinely denied by the Commonwealth because the CBA required acquittal after a jury trial. The Association proposed changes to Article 33, Section 21 that would mandate the Commonwealth to provide legal representation to employees named in a civil complaint or reimburse counsel fees in defense of a criminal complaint when arising out of the job duties, as well as payment of civil judgments. The Commonwealth opposed the changes, stating that 4 Pa.Code § 39.1, adopted by the Executive Board,[3] prohibited Commonwealth lawyers from representing employees in criminal matters. The arbitration panel issued an award

adopting the Association's proposed amendments to language in the CBA.[4] The Commonwealth filed an appeal to this Court from that arbitration award contending that the arbitration panel exceeded its authority because those provisions were at variance with 4 Pa.Code §§ 39.1–39.3 that provided the matter in which representation would be provided.

Agreeing with the Commonwealth, the majority strikes down that portion of the arbitration award reasoning:

● Section 709(f) of the Administrative Code, 71 P.S. § 249(f), gives the Executive Board the authority to make rules and regulations providing for travel, lodging and **"other expenses"** for which all officers and employes of the executive branch of the State Government may be reimbursed;

● The Executive Board adopted as regulations, not policy statements, those provisions set forth at 4 Pa.Code §§ 39.1–39.3 relating to the legal representation of all executive branch employees; and

● Because those regulations have the same force and effect of law, to the extent that the Arbitration Panel's award varies from the manner in which legal representation by the Common-

3. "The Executive Board shall consist of the Governor, who shall be Chairman thereof, and six other heads of administrative departments to be designated from time to time by the Governor." Section 204 of the Administrative Code, April 9, 1929, P.L. 177, 71 P.S. § 64.

4. Pennsylvania State Troopers' Association with the Commonwealth had a similar provision to the one being challenged here. That contract provides in Article 27 entitled "Legal Counsel" the following:

Section 1. If a member is charged with a criminal action arising from the performance of his/her duties, he/she shall select local counsel in consultation with his/her Commanding Officer. The Commonwealth

shall pay for the fees of such counsel to the extent the fees are in line with prevailing rates in the area.

Section 2. If a member is a defendant in a civil suit arising from the performance of his/her duties, the Commonwealth shall immediately furnish counsel and defend the member.

Section 3. The Commonwealth shall be responsible for judgments rendered against the member in job-related suits where the member has acted within the scope and responsibility of his/her office.

*See Pennsylvania State Police v. Fraternal Order of Police,* 160 Pa.Cmwlth. 251, 634 A.2d 789 (1993).

wealth is offered, it must be struck down as unlawful.

## B.

I disagree with the majority because what determines whether the arbitration award was enforceable is not whether the Code provisions relating to legal representation are policy statements or regulations, but whether the arbitration award here requires a "legislative enactment" to implement its terms. Section 805 of Act 195, 43 P.S. § 1101.805, the specific provision authorizing interest arbitration for guards and other essential public personnel, provides:

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining ..., *the impasse shall be submitted to a panel of arbitrators whose decision shall be **final and binding** upon both parties with the proviso that the decisions of the arbitrators which would require **legislative enactment** to be effective shall be considered advisory only.* (Emphasis added.)

The majority posits that the arbitration award cannot be implemented because Section 216 of the Administrative Code, 71 P.S. § 249,[5] and what it calls its companion provision, Section 214 of the Administrative Code, 71 P.S. § 74, vest exclusive authority in the Executive Board to fix what can be reimbursed and at what cost for all officers and employees, including guards at prisons and mental hospitals. Because exclusive authority is vested in the Executive Board, it holds that a "legislative enactment" would be needed to amend those two provisions of the Administrative Code to make expenses subject of bargaining. Moreover, because reimbursement or payment of legal fees cannot be negotiated because it is not a term of employment, the majority finds that award is illegal and cannot be implemented.[6] The majority is wrong for several reasons.

First, provisions of the Administrative Code do not need to be amended because those provisions dealing with terms and working conditions of employment have already been superseded for union employees by Act 195 which gave public employees the right to bargain. Section 101 of Act 195, 43 P.S. § 1101.101, provides that it was the public policy of the Commonwealth to require "public employers to negotiate and bargain with employe organizations representing public employes and

**5.** 71 P.S. § 249 provides in relevant part: "Subject to the rules and regulations of the Executive Board, the heads of administrative departments, the members of independent administrative boards and commissions, the members of departmental administrative bodies, boards, and commissions, the members of advisory boards and commissions, all administrative officers, and all persons employed under the provisions of this act, shall be entitled to receive their traveling and other necessary expenses, actually incurred in the performance of their public duties...."

**6.** The majority posits that the dissent is raising a "brand new issue" because the dissent relies on Section 805 of Act 195 for its position that the Commonwealth is required to carry out an award unless it requires a "legislative enactment." I am a bit non plussed by that position, considering that the majority states the "Commonwealth's issue on appeal [is] whether the [arbitration] award requires the Commonwealth to perform acts prohibited by law." If the Commonwealth is required by Section 805 to implement any award not requiring a legislative enactment, this is not a "brand new issue," but a direct answer to the issue raised. The majority, I respectfully suggest, is confusing what is an issue and what is a rationale.

to enter into written agreements evidencing the result of such bargaining ..." Section 701 of Act 195, 43 P.S. § 1101.701, provides that public employers must negotiate with public employees over "wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder." While under Act 195 the Executive Branch has the discretion to negotiate those terms, the General Assembly, by providing in Section 803 of Act 195 that a provision of an award was "final and binding" unless it requires a "legislative enactment," meant that the Executive Branch, including the Executive Board, could have the terms and conditions fixed by an arbitrator. (See also Section C, infra.)

Second, contrary to the majority, nothing requires a legislative enactment because only a regulation and not a statute is at odds with the award. A "legislative enactment" is the passage of a statute by the General Assembly, not the adoption of a regulation by an administrative agency.[7] Because a regulation can be changed by the Executive Branch in its discretion and does not require a legislative enactment, i.e., a statute by the General Assembly, under Section 805 of Act 195, the award is legal, final and binding.

Third, the inescapable outcome of the majority reasoning is that for all intents and purposes, public employment collective bargaining would cease to exist as we know it because there are statutes vesting "exclusive jurisdiction" in department heads, city councils, mayors and supervisors to set salaries and determine other terms and conditions of employment. Particularly pertinent here is Section 214 of the Administrative Code, 71 P.S. § 74, providing that:

> [H]eads of the several administrative departments, ... and the independent administrative boards and commissions, shall ... fix the compensation of such directors, superintendents, bureau or division chiefs, assistant directors, assistant superintendents, assistant chiefs, experts, scientists, engineers, surveyors, draftsmen, accountants, secretaries, auditors, inspectors, examiners, statisticians, marshals, clerks, stenographers, bookkeepers, messengers, and other assistants and employes as may be required for the proper conduct of the work of their respective departments, boards, or commissions. Except as otherwise provided in this act, the heads of the respective administrative departments shall appoint and fix the compensation of such clerks, stenographers,

7. Our Supreme Court in *Franklin County Prison Board v. Pennsylvania Labor Relations Board*, 491 Pa. 50, 60–61, 417 A.2d 1138, 1143 (1980), held that what was a "legislative enactment" for the purpose of Section 805 of Act 195 required appropriation of funds or levying of taxes by a legislative body. In doing so, it rejected the assertion that the fixing of salaries and compensation by a Salary Board was equivalent with appropriation of funds and levying of taxes by a lawmaking body. In holding that Salary Board actions were merely legislative in nature, it went on to state:

> [S]ection 805 of Act 195 provides decisions of arbitrators considering collective bargaining impasses between affected employes and their employers "shall be final

and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only." In light of the expressed purposes of Act 195 and the reliance on arbitration as an alternative to striking (especially for those employes prohibited from striking), we cannot accept the Prison Board's interpretation of section 805 that the mere existence of authority in the Salary Board to "fix salaries and compensation" renders all arbitration awards touching upon such items advisory only. Such an interpretation would nullify, for all practical purposes, the "final and binding" provisions of section 805 for all awards regarding salaries or other compensation.

**and other assistants,** as may be required for the proper conduct of the work of any departmental administrative bodies, boards, commissions, or officers, and of any advisory boards or commissions established in their respective departments. (Emphasis added.)

Under the majority's reasoning then, the compensation of prison guards is not subject to bargaining because that determination is within the "exclusive jurisdiction" of the "head" of the Department of Corrections. Also, applying the majority reasoning, neither is sick leave or vacations subject to bargaining because they are similarly determined by regulations issued by the Executive Board.[8] Again, Act 195 makes all terms and conditions of employment subject to bargaining unless, by statute, the matter is specifically excluded from collective bargaining.

In response to my suggestion that its "exclusive jurisdiction" to fix "expenses" reasoning equally applies to the "exclusive jurisdiction" given to department heads to fix all employees' compensation under the Administrative Code, the majority states, of course, "compensation" or "wages" are negotiable because Act 195 specifically so provides. The majority then goes on to state that because "expenses" are not "compensation," they are not negotiable, can be reimbursed solely as determined by a public employer, and are not subject to collective bargaining. It reasons that is so because an employee salary is assumed to cover all work-related expenses, unless the Executive Board deigns to reimburse those expenses, an expense associated with work that is not reimbursable.

The majority position is inconsistent in that if expenses are presumed to come out of an employee's salary, then expenses, including legal expenses, are subject to negotiation and arbitration in determining the amount of salary an employee is to receive. Moreover, the majority ignores that Act 195[9] authorizes collective bargaining over all "terms and conditions of employment" which includes "expenses" such as uniform allowances, "sick leaves" and "paid leaves of absence," i.e., "vacations."[10]

Finally, the majority holds that legal fees are not negotiable or awardable by an arbitrator because they are not terms or conditions of employment, necessarily implying that all such provisions contained in

---

**8.** The majority's holding will not only remove legal representation for correction officers, but will also remove other areas from collective bargaining for all employees because the Administrative Code requires that they be set by regulation by the Executive Board. For example, Section 222 of the Administrative Code, 71 P.S. § 82, provides, in relevant part:

(b) Each salaried, hourly or per diem employe of such department, board, or commission shall be entitled each calendar year to **annual leave of absence with pay** in accordance with **regulations** established by the Executive Board.

(c) Each salaried, hourly or per diem employe of such department, board or commission shall be entitled each calendar year to **sick leave with pay** in accordance with **regulations** established by the Executive Board.

(Emphasis added.)

**9.** Section 701 of Act 195 provides that "Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached...." 43 P.S. § 1101.701.

**10.** The majority states that "under the dissent's logic, any provision contained in a bargaining unit might seek in a CBA is a 'term and condition' of employment," when all that it says is that if it relates to employment, then it is the subject of negotiation.

existing contracts are illegal. What this ignores is that most public officials, including judges, are routinely sued for actions they undertake as part of carrying out their responsibilities—it comes with the job—it is a condition of employment. To insure that a defense is made available, collective bargaining agents for law enforcement officers negotiate with or seek to have awarded reimbursement of counsel fees incurred in defense of actions brought against their members arising out of their employment. By holding that counsel fees are not terms of employment, the majority removes them a subject from bargaining, meaning similar provisions contained in collective bargaining agreements throughout this Commonwealth are now illegal. Moreover, because a police officer or corrections officer's defense is not subject to bargaining, under the majority's reasoning, whether a corrections or police officer's counsel fees are paid is now at the sufferance of the public employer.[11]

## C.

Even assuming that the cited regulations are tantamount to a statute or the pertinent Administrative Code provisions have not been supplanted, the majority ignores that a statute covering the same subject matter does not mean that the matter is not subject to bargaining. Section 703 of Act 195, 43 P.S. § 1101.703, forbids implementation of a provision in conflict with a statute only where the statute specifically prohibits that the matter be subject to collective bargaining. Section 703 provides:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any **statute or statutes enacted by the General Assembly** of the Commonwealth of Pennsylvania or the provisions

11. To mask that it is making the reimbursement of legal fees and other expenses totally at the sufferance of the Executive Board subjecting corrections officers and state troopers to financial ruin for meritless charges brought by criminals, the majority cites egregious examples for which the Employer would be responsible for counsel fees and payment of judgments. I agree with the majority that it would be unfortunate if the Commonwealth would have to pay fees in those circumstances. Much like we toss out coerced confessions that limit the ability to convict individuals to further the overriding good that the Constitution should be followed, the Commonwealth may have to pay those fees so that corrections officers and state troopers know that they can carry out their duties assured that their families will not be financially ruined by having to pay counsel fees.

Nonetheless, ignoring both the majority's and my rhetoric, our Supreme Court has held that legal fees are to be paid, even in excessive force claims, as long as the employee was acting within the scope of his or her employment. In *Renk v. City of Pittsburgh*, 537 Pa.

68, 641 A.2d 289 (1994), our Supreme Court required the City to indemnify a police officer found liable to the plaintiff under various state tort claims arising out of the officer's use of unnecessary or excessive force in arresting the plaintiff. The Court imposed liability on the City under the Tort Claims Act, 42 Pa.C.S. § 8548(a), for the judgment against the officer because he acted within the scope of his duties. *See also Wiehagen v. Borough of North Braddock*, 527 Pa. 517, 594 A.2d 303 (1991) (holding borough liable in state court to indemnify police officer for compensatory damages judgment against him for using excessive force and holding borough liable for plaintiff's reasonable attorneys fees, costs and expenses incurred in a Section 1983 action because he was acting within scope of his employment.)

The majority states there is a difference between those cases and the award here because those cases did not require counsel fees to paid when incurred. This is a "pay me now, or pay me later" distinction, a distinction without a difference as to whether correction officers' counsel fees can be reimbursed.

of municipal home rule charters. (Emphasis added.)

We cogently described the scope of this section recently in *Abel v. City of Pittsburgh*, 890 A.2d 1, 7 (Pa.Cmwlth.2005) (Leavitt J.), where we stated:

Section 703 of Act 195 has been the subject of definitive interpretation by the Pennsylvania Supreme Court. In *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), the meaning of Section 703 was raised in the context of a teachers' collective bargaining agreement. The Public School Code of 1949 established an extensive and comprehensive system to meet the educational needs of the citizens of the Commonwealth. This Court held that the duties given to a public school board could not be the subject of collective bargaining. Because it was the duty of the school board to set teacher salaries, teacher salaries could not be established by negotiation. Thus, Section 701 of Act 195, which mandates public employers and representatives of public employees to negotiate "with respect to wages, hours and other terms and conditions of employment" was found not to apply.

The Supreme Court disagreed, finding that, notwithstanding the Public School Code mandate, a school board was required to negotiate wages. It explained why Section 703 did not compel another result.

**The mere fact that a particular subject matter may be covered by legislation does not remove it from collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment.** We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive. State College Area School District, 461 Pa. at 508, 337 A.2d at 269. It further explained that in determining a "violation ... with any statutory directive," courts must examine that "statutory directive" as follows: [I]tems bargainable under section 701 are only excluded under section 703 where other **applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment.** *Id.* at 510, 337 A.2d at 270.

Thus, State College Area School District teaches that Section 703 prohibits parties from collectively bargaining a term that another statute "explicitly and definitively prohibit[s] the public employer from making." *Id.* **In the absence of a direct prohibition, an issue must be negotiated under Section 701 if it impacts wages, hours and other terms or conditions of employment.** (Emphasis added; footnotes omitted.)

*See also Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978) (discharging of a civil service employee was subject to arbitration even though there was a provision in the second class city code that civil service provisions of that Act were "intended ... to furnish a complete and exclusive system for the appointment, promotion, reduction, transfer, removal, or reinstatement of all officers, clerks, laborers, and other employés in the civil service of the cities of the second class in this commonwealth." 53 P.S. § 23461.)

Because nothing in the Administrative Code forbids the Executive Board from agreeing to negotiate matters relating to legal representation of correctional officers, the matter is required to be submitted to arbitration under Section 805 of Act 195 if an agreement cannot be reached.

## D.

Finally, assuming that the majority's interpretation is correct, because all that is claimed is that the arbitration award relating to legal representation is at variance with a regulation, it is not reviewable under the narrow certiorari test. In *Fraternal Order of Police, Lodge No. 5 ex rel. Costello v. City of Philadelphia,* 725 A.2d 206 (Pa.Cmwlth.1999), we held that appeals from mandatory interest arbitration under Act 195 are not reviewed under the essence test, but are reviewed under the more narrow certiorari test. Narrow certiorari requires us to review only the question of jurisdiction, the regularity of the proceedings, questions of excess in the exercise of the arbitrator's powers and constitutional questions. *Pennsylvania State Police v. Pennsylvania State Troopers' Association,* 540 Pa. 66, 71, 656 A.2d 83, 85 (1995). In this case, the majority, without so stating, seems to imply that we can reach this question because the award was in excess of the arbitrator's powers as the award was not in accord with the Administrative Code provision relating to legal representation.

Just because the award is at variance with a regulation does not necessarily mean that it is in excess of the arbitration panel's powers. As our Supreme Court has instructed, what is in excess of the arbitrator's powers under that narrow certiorari test is not whether the decision is unwise, manifestly unreasonable, burdens the taxpayer, is against public policy or is an error of law; an arbitrator only exceeds his power if he mandates that an illegal act be carried out or requires a public employer to do that which the employer could not do voluntarily. *See generally Borough of Nazareth v. Nazareth Borough Police Association,* 545 Pa. 85, 680 A.2d 830 (1996); *Pennsylvania State Police v. Pennsylvania State Troopers' Association.* Because nothing forbids the Commonwealth from providing for legal representation as was called for under the award, we cannot reach this issue under the narrow certiorari standard.

Accordingly, for the above-stated reasons, I would affirm the award.

Judges SMITH–RIBNER and FRIEDMAN join this dissenting opinion.