IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Berks,                    :
          Appellant         :
                       :   No.  542 C.D. 2022
          v.             :
                       :   Argued: November 6, 2023
Teamsters Local 429      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH              FILED: December 1, 2023

The County of Berks (County) appeals from the May 6, 2022 order of the Berks County Court of Common Pleas (trial court) denying the County's Petition to Modify and/or Vacate Partially an Act 195[1] Interest Arbitration Award (Petition). Upon review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The underlying subject of this appeal is the December 2, 2021 Act 195 Interest Arbitration Award (Award), which establishes the terms and conditions for a collective bargaining agreement (CBA) between the County and Berks County Jail correctional officers and maintenance employees (Jail Employees). These Jail Employees are organized in a collective bargaining unit represented by Teamsters Local 429 (Union).

---

[1] Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. §§ 1101.101-1101.2301. Act 195, as it is commonly referred to, is the Public Employe Relations Act (PERA). Act 195 requires public employers and their employees to bargain in good faith over "wages, hours, and other terms and conditions of employment[.]" Section 701 of Act 195, 43 P.S. § 1101.701.

The County and Union were parties to a CBA that expired on December 31, 2019. When negotiations did not produce a successor agreement, the parties proceeded to binding interest arbitration pursuant to Section 805 of Act 195, 43 P.S. § 1101.805.[2] The County-appointed and Union-appointed arbitrators jointly agreed that Jared Kasher would serve as the impartial member of the three-person interest arbitration panel (Panel). Before the Panel convened for hearings, the COVID-19 Pandemic began to develop and impact the County and its operations.

On March 18, 2020, the federal Families First Coronavirus Relief Act (FFCRA)[3] was signed into law, which created emergency paid leave benefits in response to the COVID-19 global pandemic. Its provisions became effective on April

---

[2] Section 805 of Act 195 provides as follows:

> **Section 805**. Guards and court personnel; Binding Arbitration.
>
> Notwithstanding any other provisions of this act **where representatives of units of guards at prisons** or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth **have reached an impasse in collective bargaining** and mediation as required in section 801 of this article has not resolved the dispute, **the impasse shall be submitted to a panel of arbitrators** whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

43 P.S. § 1101.805 (emphasis added).

[3] Pub. L. No. 116-127, § 5102(a), 134 Stat. 178, 195 (2020). Under time-limited statutory authority established by the FFCRA, the United States Secretary of Labor promulgated temporary implementing regulations, effective April 2, 2020, through December 31, 2020, which were set forth in the Code of Federal Regulations at 29 CFR Part 826. However, as of the time of this writing, 29 CFR § 826.20 and 29 CFR § 826.30 are not found within 29 CFR Part 826, either on Westlaw or in the Electronic Code of Federal Regulations published at hHps://www.ecfr.gov/cgi-bin/ECFR.

2, 2020, and expired on December 31, 2020. The FFCRA provided eligible employees who were unable to work for reasons related to COVID-19 with up to 80 hours of emergency paid time off to use for a "qualifying reason" related to COVID-19 prior to using their own available paid leave benefits. A "qualifying reason" for paid leave included: (a) being subject to a quarantine pursuant to Federal, State, or local government order or advice of a health care provider; (b) experiencing COVID-19 symptoms and seeking a medical diagnosis; and (c) caring for someone subject to quarantine, or caring for a child whose school or day care was closed due to COVID-19. The FFCRA also expressly provided employers with the discretion to exempt "emergency responders" from the FFCRA's leave provisions. Pub. L. No. 116-127, § 5102(a). An "emergency responder" under the FFCRA includes correctional institution personnel. It is undisputed that the Jail Employees were considered "emergency responders" under the FFCRA. The premise underlying these exemptions was recognition of the fact that some employers, including many public employers, provided essential services that could not be discontinued or disrupted by a lack of available employees. *See* Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19,326, 19,335 (April 6, 2020).

Here, the County elected to exclude, *inter alia*, the Jail Employees from the leave provisions of the FFCRA to ensure there were sufficient staff members to operate critical 24/7 operations.[4] (R.R. at 148a.) The Jail Employees remained eligible to use available paid or unpaid time off for personal illness. *Id.* at 151a. For instance, they could utilize sick leave provided under the CBA and/or apply for leave under the

---

[4] The County also exempted from the FFCRA emergency responders in the 911 Call Center, the Sheriff's Department, and the Berks Heim Nursing Facility. (Reproduced Record (R.R.) at 148a.)

3

Family and Medical Leave Act (FMLA)[5] or unpaid leave. *Id.* In addition, following confirmed exposure to a colleague who tested positive for COVID-19, the County provided paid administrative leave to a number of Jail Employees directed to quarantine for 14 days. *Id.*

In March of 2020, the County began to receive grievances from Jail Employees under the above procedure challenging the County's decision to charge absences against their available sick time or accrued leave time to cover their absence from work. *Id.* at 10a, 21a. In these grievances, the Jail Employees and Union sought payment/reimbursement from the County for various absences alleged to be related to COVID-19 and/or exposure to COVID-19. *Id.* In total, the County received approximately 43 such grievances, including individual and class action grievances. *Id.* at 10a, 21a. In response, the County notified the Union on several occasions of its decision to exercise its statutory option to exempt Jail Employees from the FFCRA's paid leave provisions.

The Panel conducted hearings on November 9 and 10, 2020, December 8 and 11, 2020, January 28, 2021, and March 19, 2021.[6] Additionally, the Panel completed a guided tour of the Berks County Jail on May 25, 2021. During the hearings, the Union presented its issues in dispute, in which it identified the proposals it sought to have the Panel include in its Award. As to the COVID-19 related issues, the Union included the following proposal:

> Security (Article 32): Amend Article 32 with the following
> new sections, as follows:
> . . . .

---

[5] 29 U.S.C. §§ 2601, 2611-2620, 2631-2634, 2651-2654.

[6] The hearings were not transcribed or recorded since the County elected not to secure a court reporter.

32.16. The [County] will provide 80 hours of paid leave to each employee, retroactive to April 2, 2020, to be used for one of the following needs: (1) the employee is subject to a Federal, state or local quarantine or isolation order; (2) the employee has been advised by a health care professional to self-quarantine due to concerns related to a pandemic; (3) the employee is experiencing symptoms of an infectious disease related to the pandemic and seeking a medical diagnosis; (4) the employee is caring for an individual who is subject to an isolation order or self-quarantine; (5) the employee is caring for a son or daughter whose school or place of care has been closed due to a pandemic; and/or (6) a similar reason as specified by the designated Federal agencies.

*Id.* at 74a.

The County also included a list of proposals, appointed an arbitrator and proceeded to arbitration.

Testimony and documentary evidence were provided regarding the Union's proposal and prior demands for the County to provide FFCRA benefits to the Jail Employees. (R.R. at 143a-46a.) The Union produced and the Panel received into evidence statistics regarding comparable counties of the Commonwealth which voluntarily provided FFCRA and FFCRA-like benefits to its correctional officers, thus choosing not to invoke the permissible, but not mandatory, exemption contained in the FFCRA. *Id.* Furthermore, the parties presented evidence and argument regarding staffing at the Berks County Jail.

The Panel issued its final Opinion and Award on December 2, 2021. The Award modified Section 32 of the CBA by requiring the County to provide 80 hours of paid leave to Jail Employees for absences related to COVID-19 retroactive to March 18, 2020, and through the expiration of the FFCRA on December 31, 2020. Specifically, Paragraph 12 of the Award stated:

**12. Health and Safety** (Article 32)

5

[Article] 32.2 shall be amended to add the following:

The Covid[-]19 pandemic has had an enormous impact on employers and employees. On March 18, 2020 the Federal Government passed the Families First Coronavirus Response Act ("FFCRA"), which expired on December 31, 2020. One of the primary purposes of the Act was to provide leave benefits to employees who have been forced to miss time from work as a result of the virus. The County has asserted that [Jail Employees] are exempt from the mandates of the Act. The Union however has provided evidence that similar and comparable surrounding counties have provided 80 hours of paid leave to employees to be used for one of the following needs: (1) the employee is subject to a Federal, state or local quarantine or isolation order; (2) the employee has been advised by a health care professional to self-quarantine due to concerns related to the pandemic; (3) the employee is experiencing symptoms of an infectious disease related to the pandemic and seeking a medical diagnosis; (4) the employee is caring for an individual who is subject to an isolation order or self-quarantine; or (5) the employee is caring for a son or daughter whose school or place of care has been closed due to a pandemic.

**<u>This Panel believes that employees working in the County Jail should be afforded these benefits during the effective period of the FFCRA</u>**. **<u>Accordingly, the Panel directs the [County] to provide 80 hours of paid leave to each affected employee retroactive to March 18, 2020, and through the expiration of the FFCRA on December 31, 2020</u>**.

There are a number of pending cases involving members of the bargaining unit who are impacted by the Panel's determination to order such coverage. The County argues that in some of the cases, the behavior of the [Jail Employee] unreasonably caused his or her infection and has requested an opportunity to challenge application of this benefit because of that behavior. Accordingly, while the Panel

6

adopts the conclusion that members of the bargaining unit should be made whole for such lost time, the Panel will retain jurisdiction after the issuance of this award to hear the challenge of the County to individual cases and decide whether the County's argument on such individual cases has merit. The County is directed to submit a list of the [Jail Employees] and dates which the County believes should not receive such benefits because of the [Jail Employee's] behavior within 60 days of the issuance of this Award. The Panel shall reconvene to consider and resolve the disputed cases. All other impacted [Jail Employees] shall be made whole within 60 days of the date of issuance of this Award.

Award, at 6-7 (emphasis added).

The County-appointed arbitrator dissented to the above cited portion of the Award on the basis that the Panel majority had exceeded its authority and jurisdiction by nullifying the clear statutory right and managerial prerogative of the County to exempt emergency responders from providing paid sick leave under the FFCRA, the purpose of which was to ensure the delivery of essential services. He stated:

In my view, by including Paragraph 12 of the Award (Health and Safety), a majority of the Panel has exceeded the limited authority bestowed by [Act 195]. This provision of the Award purports to confer upon [Jail Employees] the full scope of benefits contained in the Families First Coronavirus Response Act ("FFCRA"), including paid time off for [C]ovid-related school and child-care closures, retroactive to March 13, 2020, and through the expiration of the FFCRA on December 31, 2020.

However, the now-expired FFCRA contains a specific provision that permitted employers to exempt "emergency responders," which includes a variety of first responders as well as prison guards, in recognition that full-blown application of the FFCRA to certain workers could have a detrimental impact on essential government services.

7

Although soundly exercising its right to invoke this exemption for its [Jail Employees] and certain other essential County employees, the County provided up to ten (10) days of leave with pay where contact tracing or other evidence indicated that a [C]ovid-related health condition or exposure took place under work related circumstances. In my view, **the attempt by a majority of the Panel to apply the FFCRA to a group of County employees who are specifically and properly exempted from that statute, thereby nullifying a clear statutory right and area of discretion belonging exclusively to the County under federal law, exceeds this Panel's authority and jurisdiction**.

(Award, Dissenting Opinion, at 1) (emphasis added). The County-appointed arbitrator further asserted that the Panel majority erred by *sua sponte* consolidating outstanding grievances for resolution by the Panel notwithstanding the fact that the grievances had been processed to arbitration and assigned to other arbitrators for disposition. *Id.*

On December 30, 2021, the County filed the Petition, requesting the trial court to strike Paragraph 12 in its entirety from the Award based on the following:

38. In the present case, a majority of the [Panel] exceeded its authority and jurisdiction and committed reversible error by awarding the language of Paragraph 12 of the Award. Specifically, in unilaterally imposing provisions identical to the now-expired FFCRA, a majority of the [Panel] nullified the managerial prerogative of the County to exempt emergency responders from coverage under the FFCRA, the purpose of which was to ensure the delivery of essential services.

39. By purporting to impose the provisions of the FFCRA on members of the bargaining unit, a majority of the [Panel] exceeded its authority and jurisdiction and committed reversible error by attempting to dictate decisions which are fundamental to the direction of public enterprise.

8

Specifically, as set forth in the letter to the Union from the County which is contained in the record, the County's decision to exempt all of the County's emergency responder positions from coverage under the FFCRA was to ensure that essential 24/7 services could continue to be provided by the County.

40. A majority of the [Panel] further compounded its initial reversible error by purporting to consolidate before the [P]anel, approximately 43 grievances concerning absences allegedly related to Covid-19. These grievances were never placed before the interest arbitration panel or offered into the record before the interest arbitration panel. At no point in time did either party request that the interest arbitration panel assume or assert jurisdiction over the diverse group of grievances. Moreover, many of the underlying grievances had already been assigned to other arbitrators through the contractual grievance procedure.

(R.R. at 14a-15a.) The Union answered, and filed new matter, and the case was subsequently briefed and argued. On May 6, 2022, the trial court issued an order denying and dismissing the Petition, first concluding that the County waived its right to argue that provision of FFCRA benefits was a non-negotiable matter of managerial prerogative by allowing the litigation of those issues to go forward, and second, concluding that it was constrained by the narrow *certiorari* standard of review to affirm. The trial court did not specifically address the substance of the County's Petition, based on its conclusion that the County had waived any objections to Paragraph 12 of the Award by participating in the underlying arbitration hearings. The trial court's May 6, 2022 order states, in its entirety, as follows:

AND NOW this 6th day of May 2022, after argument and consideration of the briefs of the parties, the Petition of the County of Berks "to Modify and/or Vacate Partially an Act 195 Interest Arbitration Award" is hereby Denied and Dismissed. This order is entered for the reason that, under

9

the narrow scope of review (narrow *certiorari* review) that constrains the powers of this Court, **the interest arbitration [P]anel did not act in excess of its jurisdiction and did not act in excess of its powers as any objection at the time of the hearings was waived, thereby permitting the litigation of the issues complained of by the [C]ounty to go forward**. *See* 2020 Act Interest Arbitration Award which is attached hereto as Exhibit A. That award clearly indicates in the background section on page one (1) that "both parties dedicated considerable time and effort in presenting evidence and argument regarding the staffing at the prison." Thus, both parties litigated the issue[s] fully and completely, being able to call witnesses and cross[-]examine adverse witnesses. Therefore, we believe that the [P]anel acted properly.

(Trial Ct. Order, 5/6/22, at 1) (emphasis added).

## ISSUES

On appeal, the County raises three issues:

1. Whether the Panel infringed upon the County's managerial prerogatives and statutory rights by requiring the County to provide benefits to under the FFCRA in derogation of the County's decision to exempt Jail Employees from the coverage of the FFCRA?

2. Whether the Panel exceeded its authority and jurisdiction by consolidating grievances which had not been placed into evidence during the hearing and/or jurisdiction of the Panel by the parties?

3. Whether the trial court erred in dismissing the County's Petition based on the erroneous conclusion that the County waived the issues presented on appeal?

10

## DISCUSSION

### Scope and Standard of Review

Interest arbitration awards issued pursuant to Act 195, like appeals under Act 111,[7] are subject to review under the narrow *certiorari* standard. *See Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 725 A.2d 206 (Pa. Cmwlth. 1999). Courts reviewing Act 195 interest arbitration awards are confined to the following areas: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. The third question is implicated here.

An interest arbitration panel exceeds its power when it mandates that the public employer, *inter alia*, perform an action unrelated to a bargainable term or condition of employment.[8]  *Department of Corrections v. Pennsylvania State*

---

[7] The Police and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, as amended, known as Act 111.  43 P.S. §§ 217.1-217.10.

[8] Section 701 of Act 195, 43 P.S. § 1101.701, delineates those matters which may be properly subject to collective bargaining agreements. It states:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

Section 702 of Act 195, 43 P.S. § 1101.702, however, places limitations on the scope of Section 701 by identifying matters specifically not subject to bargaining. It states:

> **Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and**

**(Footnote continued on next page…)**

11

*Correctional Officers Association*, 12 A.3d 346, 356 (Pa. 2011). Under the above standard of review, a reviewing court may modify or vacate an arbitration award which impinges upon an employer's managerial rights. *Borough of Morrisville v. Morrisville Borough Police Benevolent Association*, 756 A.2d 709 (Pa. Cmwlth. 2000).

### 1.

We address the waiver issue first. The basis for the trial court's decision to dismiss the County's Petition was its conclusion that the County waived any objection to the Award by permitting the litigation of the issues complained of "to go forward."[9] We assume the trial court meant that the County did not argue to the Panel that the FFCRA leave benefit issue was not bargainable under Section 702 of Act 195 because it was a matter of inherent managerial policy. Because there was no transcript of the proceedings, and without any explanation by the trial court, we are unable to verify from the record that this was the case. Nevertheless, we do note that the County's appointed arbitrator, in his dissenting opinion, directly dealt with the issue, arguing that the Panel majority **had exceeded its authority and jurisdiction by nullifying a clear statutory right and area of discretion belonging exclusively to the County under federal law to exempt emergency responders from providing paid sick leave under the FFCRA**. We have previously held that the issue of a panel's authority was not waived where the dissenting arbitrator's opinion indicated that the

---

**programs of the public employer, standards of services, its overall budget, utilization of technology the organizational structure and selection and direction of personnel**. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives. (emphasis added).

[9] The Union does not address the waiver issue in its brief.

award was "contrary to law." *See Department of Corrections v. Pennsylvania State Corrections Officers Association*, 932 A.2d 359, 364-65 (Pa. Cmwlth. 2007), *aff'd in part and rev'd in part on other grounds*, 12 A.3d 346 (Pa. 2011) (holding that issue of panel's authority was not waived because "finally, and perhaps most significantly, the Commonwealth's appointed arbitrator dissented from Paragraph 18 of the award as being, *inter alia*, 'contrary to law.'") Here, as in *Department of Corrections*, the dissenting opinion directly addressed the issue raised before the trial court, which was whether the Award exceeded the Panel's authority and jurisdiction because it infringed upon the County's statutory and managerial prerogative to exempt Jail Employees from the FFCRA leave benefits. Because the issue was specifically addressed by the dissenting opinion, and the proceedings were not transcribed, we are unable to conclude that other Panel members were not aware of the County's position that awarding Jail Employees FCCRA benefits would be in excess of the Panel's authority and jurisdiction. Furthermore, the record includes correspondence in the Spring of 2020 between the County and Union wherein the Union voiced its objection concerning the County's decision to exempt Jail Employees from the protections afforded by the FFCRA. (R.R. at 137a-38a, 144a-45a.) In response, the County clearly and specifically advised the Union that it was "not providing FFCRA benefits to any essential County employees" and that its decision was "necessary to ensure there are sufficient staff members to operate these critical 24/7 operations." *Id.* at 148a. This is evidence that the issue of FFCRA leave benefits was an issue of contention between the parties, which led up to the impasse. Absent any evidence of record to the contrary, there is no reason for us to assume that the County did not carry forward this same argument before the Panel. We also find it significant that the Union does not challenge

13

the County's position that the issue was not waived.  Accordingly, for the above reasons, we deem it appropriate to address the merits of the County's arguments.

**2.**

The County argues that the Panel encroached upon its managerial prerogatives and statutory rights by requiring the County to provide Jail Employees leave benefits under the FFCRA in derogation of the County's decision to exempt them from the coverage of the FFCRA as "emergency responders."  The County contends that the decision of whether to provide Jail Employees benefits under FFCRA was an inherent managerial prerogative; therefore, the Panel exceeded its authority and jurisdiction by issuing Paragraph 12 of the Award.

In response, the Union argues that the Award did not compel the County's compliance with the FFCRA.  Rather, it merely provided 80 hours of paid leave limited to those bargaining unit members who met the criteria asserted, retroactive to the period between March 18, 2020, and December 31, 2020.  The Union submits that paid leave, whether in the form of vacation, personal or sick, is indisputably a mandatory subject of bargaining which affects the wages, hours and other terms and conditions of employment and, therefore, is a matter within the jurisdiction and authority of an Act 195 interest arbitration panel.  *See* Sections 1001 and 701 of Act 195, 43 P.S. §§ 1101.1001, 1101.701.  Moreover, the Union contends that the FFCRA had already expired by the time the Panel issued the Award.  Therefore, the Panel could not have compelled the County to comply with a temporary law which expired nearly a year earlier.  Finally, the Union contends that, even if we accept that the Award mandates the County to provide FFCRA benefits to the Jail Employees, the Panel's Award does not require the County to do anything illegal or that which it could not do voluntarily.

Whether a particular provision is a matter of inherent managerial prerogative rather than a bargainable condition of employment is a question of the arbitrators' power. *Department of Corrections v. Pennsylvania State Corrections Officers Association*, 12 A.3d 346. As our Supreme Court has noted:

> Because management decisions regarding policy or direction almost invariably implicate some aspect of employer-employee relations or the workplace, disputed arbitration awards more often than not concern both the terms and conditions of employment and the public employer's managerial prerogatives. *City of Phila*[*delphia*] *v.* [*International Association*] *of Firefighters, Local 22*, [] 999 A.2d 555, 570 ([Pa.] 2010). When such a hybrid item is in dispute, the following test applies:

> Under the excess-powers prong of narrow *certiorari*, the following test applies: first, the court asks whether the item in dispute is rationally related to the terms and conditions of employment, *i.e.*, whether it is germane to the working environment. If not, then the item is not subject to mandatory bargaining. If a rational relationship does exist, however, the court then inquires whether collective bargaining over the topic would unduly infringe upon the public employer's essential managerial responsibilities. If so, the award reflects an excess of the arbitrators' powers.

*Id.* at 357. In addition, the Supreme Court has acknowledged the applicability of several balancing tests to employ in these situations. Under *Pennsylvania Labor Relations Board v. State College Area School District*, 337 A.2d 262 (Pa. 1975), the balancing test weighs the directness of the impact of the issue on the employee's wellbeing against its effect on the operation of the agency in question. In *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 998 A.2d 589 (Pa. 2010), the Supreme Court noted a weighing paradigm under which it is to be determined "whether the impact of the issue on the interest of the employe in wages, hours and terms and

15

conditions of employment outweighs its probable effect on the basic policy of the system as a whole." *Id.* at 600 n.13 (quoting *State College Area School District*, 337 A.2d at 268).

In *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, the Supreme Court recognized that managerial prerogatives "include, but are not limited to, 'such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure, and selection and direction of personnel.'" *Id.* at 599 (citation omitted).

Applying these tests, the exemption of Jail Employees from the FFCRA provisions is rationally related to the terms and conditions of employment. Exempting Jail Employees and other emergency responders from the FFCRA leave benefits was intended to deter them from taking time off to care for a school age child or person under quarantine – and was germane to the working environment. The County emphasizes that it exercised its authority under the FFCRA to exempt emergency responders from the leave provisions to ensure that it would have adequate staff to continue providing critical 24/7 services at the Jail during the Pandemic. (County's Br. at 10.) Again, this was premised on the notion that, unlike some private sector employers, the County could not simply shutter the essential services it provided to the public. *Id.* Thus, calls to 911 could not just go to voicemail, the Sheriff's Department could not simply cease the services it provided, and the Jail could not simply close and cease operations. *Id.* The decision to elect to exempt Jail Employees and other emergency responders from the FFCRA was clearly the County's managerial prerogative. The County, in this case, elected to exclude the corrections officers, as emergency responders, because Jail employes are on the frontlines of public safety and

16

are responsible for the care, custody, and control of incarcerated individuals. As the County points out in its post-hearing brief, the County did so to maintain essential public services and ensure safety during the pandemic since the Jail is a 24/7 operation. Thus, the decision to exempt Jail Employees from FFCRA leave benefits concerns a managerial prerogative. *Department of Corrections*, 12 A.3d at 357. Because we find a rational relationship exists between the decision to exempt Jail Employees from the FFCRA leave benefits and the terms and conditions of employment, we next inquire whether the Award unduly infringed upon the County's essential managerial responsibilities. *Id.* If so, the Award reflects an excess of the arbitrators' powers. *Id.*

Based upon a careful reading of Paragraph 12, we are not convinced that the Award "unduly infringed upon" the County's managerial prerogatives or statutory rights. By the clear terms of the Award, the Panel awarded Jail Employees 80 hours of retroactive paid leave to be provided to bargaining unit members to cover absences related to the COVID-19 pandemic. By the time the Award was issued, the managerial effects of the County's decision to exempt Jail Employees from FFCRA leave benefits had already ensued. In other words, the County's managerial prerogative to exempt the Jail Employees had already suppressed Jail Employees from calling off work. That is, the County had already achieved its intended outcome of curtailing absences at the Jail. Pursuant to the Award, Jail Employees were made whole for lost sick leave they were forced to take by virtue of being exempted from the FFCRA leave benefit provisions. Nothing in Paragraph 12 of the Award will disrupt or cause the County to discontinue essential services. Thus, the Award, which was issued long after the FFCRA provisions expired, did not interfere with the County's managerial decision not to disrupt essential services. Rather, it provided paid leave benefits to Jail Employees who had taken leave due to COVID-19. Paid leave, whether in the form of vacation,

17

personal, or sick, is indisputably a mandatory subject of bargaining which affects the wages, hours and other terms and conditions of employment and, therefore, is a matter within the jurisdiction and authority of an Act 195 interest arbitration panel. Accordingly, we must conclude that the Panel did not exceed its authority in issuing Paragraph 12 of the Award.

**3.**

In its next issue, the County contends the Panel exceeded its jurisdiction and authority by *sua sponte* consolidating grievances, which had not been placed into evidence during the hearing and/or been placed within the jurisdiction of the Panel by the parties, and where many of the grievances were already pending before other appointed labor arbitrators. We must disagree.

As noted by this Court, "where a demand is a major one or cannot be fairly subsumed within an issue, it must be specifically raised." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 850 A.2d 846, 854 (Pa. Cmwlth. 2004), *vacated in part*, 886 A.2d 682 (Pa. 2005); *see also Michael G. Lutz Lodge No. 5, Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1230 (Pa. 2015) (An interest arbitration award may embrace only those issues which the submitting party has specifically raised in the notice of arbitration, or which are reasonably considered as subsumed within those issues.) Thus, the statutory framework of Act 195 and the caselaw speaking to the interest arbitration process require that only issues not reasonably subsumed within properly preserved issues are beyond the scope of the interest arbitration process and will not be enforceable.

Here, the remedy for the resolution of the COVID-19-related grievances is fairly and reasonably subsumed within the issue of retroactive paid leave for COVID-19-related absences, which was properly placed in dispute by the Union. At the interest

18

arbitration proceedings, the Union put forth testimony by a bargaining unit member who was required to use earned leave to cover absences related to quarantining for a close COVID-19 contact. The issue of several related grievances was discussed by the parties during the proceedings and in executive sessions. This fact is brought to light within the text of the Award, which states "[t]he County argues that in some of the cases, the behavior of the officer unreasonably caused his or her infection and has requested an opportunity to challenge application of this benefit because of that behavior." Indeed, if the Union's proposal was granted in the Award, it would resolve all the COVID-19-related grievances which sought reimbursement of earned leave used by the officers for COVID-19-related absences. The Panel did just that and the retroactive paid leave provision resolves all the grievances. Because the remedy for the resolution of the COVID-19-related grievances is fairly and reasonably subsumed within the issue of retroactive paid leave for COVID-19-related absences, which was properly placed in dispute by the Union, the County's Petition was properly denied.

Based on the forgoing, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Dumas did not participate in this decision.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Berks,          :
        Appellant     :
                        :  No.  542 C.D. 2022
        v.            :
                        :
Teamsters Local 429   :

## *ORDER*

AND NOW, this 1st day of December, 2023, the May 6, 2022 order of the Berks County Court of Common Pleas is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge